Jeff Oven, Bar No. 6-3371
CROWLEY FLECK PLLP
490 North 31st Street, Suite 500
P.O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
joven@crowleyfleck.com

Timothy Stubson, Bar No. 6-3144
CROWLEY FLECK PLLP
152 N. Durbin, Suite 220
Casper, WY 82601
Telephone: (307) 265-2279
Facsimile: (307) 265-2307
tstubson@crowleyfleck.com

Attorneys for Plaintiff

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2013 JUN 3 PM 3 34
STEPHAN HARRIS, CLERK
CASPER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| TIMOTHY MELLON, a Wyoming resident, | ) | Cause No.: 13CV118-S |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| THE INTERNATIONAL GROUP FOR HISTORIC AIRCRAFT RECOVERY, a Delaware non-profit corporation and RICHARD E. GILLESPIE, | ) ) ) ) ) | **COMPLAINT** |
| Defendants. | ) | |

Plaintiff, Timothy Mellon, a Wyoming resident, by and through his attorneys, Crowley Fleck, PLLP presents the following as his complaint against Defendant, The International Group for Historic Aircraft Recovery, a Delaware non-profit corporation and Defendant Richard E. Gillespie.

### PARTIES

1. Plaintiff, Timothy Mellon, (Mellon) is a Wyoming resident.

Receipt # CAS10166
Summons: 2 issued
         ___ not issued

2. Defendant, The International Group for Historic Aircraft Recovery (TIGHAR) is a Delaware non-profit corporation with its principal offices in Wilmington, Delaware. TIGHAR performs investigations, aviation archeology and historic preservation of rare and historic aircraft.

3. Defendant Richard E. Gillespie, (Gillespie) is a citizen of Delaware and is the Executive Director of TIGHAR.

## JURISDICTION

4. The parties are of diverse citizenship.

5. The amount in controversy exceeds the jurisdictional minimum for this Court.

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a), § 1331 and 18 U.S.C. § 1964.

## VENUE

7. The claims forming the basis of this complaint, or a significant portion thereof, arose in that geographical area which is contained within the federal judicial district known as the District of Wyoming.

8. Venue is properly in this Court pursuant to 28 U.S.C § 1391 and 18 U.S.C. § 1965(a).

## FACTS COMMON TO ALL CLAIMS

9. TIGHAR conducts investigations around the world into aircraft wreckage and accidents.

10. As part of its efforts TIGHAR engages in extensive fund raising utilizing corporate sponsorships and private dollars to fund its activities.

- 3 -

11. Among the most prominent of its efforts is TIGHAR's ongoing investigation into the disappearance of Amelia Earhart and her navigator Fred Noonan in the South Pacific in 1937.

12. TIGHAR has focused its efforts on the island of Nikumaroro in the Republic of Kiribati. The island was formerly known as Gardner Island.

13. Operating on a hypothesis that Earhart and Noonan landed and perished on Nikumaroro, TIGHAR has launched a number of expeditions to the island and conducted numerous detailed surveys and searches of the island and its surrounding waters.

14. In 2010, TIGHAR undertook an expedition to the island known as NIKU VI.

15. The expedition, which lasted from May 18, 2010 through June 14, 2010, included the use of a remote operated vehicle (hereinafter "ROV") which was equipped with a High-Definition video camera. Significant footage of the waters surrounding Nikumaroro was obtained during the investigation, including footage of the wreckage of the Lockheed Electra flown by Amelia Earhart when she disappeared in 1937.

16. TIGHAR did not disclose the discovery. Instead, TIGHAR began to plan and fund-raise for its next expedition, NIKU VII.

17. As part of its preparations for NIKU VII, the Executive Director of TIGHAR, Ric Gillespie, began meeting with potential benefactors who would support the newly planned expedition.

18. Among those who Mr. Gillespie met with in order to solicit contributions was Plaintiff, Timothy Mellon.

19. On or about March 22, 2012, Mr. Gillespie spoke with Mr. Mellon by phone while Mr. Mellon was at his home in Wyoming. During that conversation the two spoke about

the next planned expedition and the possibility that Mr. Mellon might contribute to funding the expedition.

20. Mr. Gillespie followed up by fax and by mail communicating to Mr. Mellon in Wyoming stating that the Earhart aircraft had not been located.

21. Mr. Mellon and Mr. Gillespie had an additional conversation about the possibility of supporting the latest expedition and noted his interest in being involved in discovering the whereabouts of the Earhart wreckage. At no time did Mr. Gillespie discuss the NIKU VI expedition or the debris field that was discovered as part of that expedition. Instead, Mr. Gillespie represented that the wreckage had not been found and expressed optimism that by utilizing additional tools a discovery was possible during the NIKU VII expedition.

22. Based upon TIGHAR's representations Mr. Mellon contributed stock having a value of $1,046,843.00 to help fund the NIKU VII expedition.

23. NIKU VII departed Hawaii on July 3, 2012. Mr. Mellon accompanied the expedition as did a documentary crew from the Discovery Channel and other supporters of the expedition.

24. The expedition again included the use of an ROV and a high definition camera.

25. TIGHAR has now announced its plans to fundraise for and launch yet another expedition in search of the Earhart aircraft, NIKU VIII.

## COUNT I
### (Fraud)

26. Mellon incorporates and realleges paragraphs 1 through 25 as though fully set out hereunder.

27. TIGHAR knowingly and intentionally misrepresented the status of its exploration and investigation into the Earhart aircraft to Mellon. Specifically, TIGHAR represented that the

aircraft had not been located and that additional funding and efforts were needed to locate the aircraft.

28. These representations were material and were reasonably relied upon by Mellon in making his decision to contribute to TIGHAR's proposed expedition.

29. Based upon those representations, Mellon pledged and did contribute $1,046,843.00 to support the NIKU VII expedition.

30. Plaintiff's reasonable reliance on such representations has directly, proximately and foreseeably caused Plaintiff's damages.

31. Plaintiff is entitled to a judgment against TIGHAR in an amount to be proven at trial, for damages sustained by Plaintiff as the direct, proximate and foreseeable result of the Defendant's fraud.

## COUNT II
### (Negligent Misrepresentation)

32. Mellon incorporates and realleges paragraphs 1 through 31 as though fully set out hereunder.

33. Prior to Mellon's donation, TIGHAR represented that its search for the Earhart aircraft was unsuccessful and that additional efforts were needed to discover the aircraft.

34. TIGHAR had, at the time it made the representations, a pecuniary interest in the transaction with Plaintiff.

35. TIGHAR made such representations in the regular course of its business, and made such representations for the purpose of persuading Mellon to make a contribution to its efforts.

36. At the time TIGHAR made such representations, they were false, as Defendant had filmed the wreckage of the aircraft during the course of its prior expedition in 2010.

37. TIGHAR failed to exercise reasonable care and competence in the review of information obtained from its prior expeditions which demonstrated the representations made by TIGHAR to be false.

38. Mellon reasonably and justifiably relied on the representations made by TIGHAR as described herein to his detriment and made a contribution in reliance upon the misrepresentations.

39. Plaintiff is entitled to a judgment against TIGHAR, in an amount to be proven at trial, for damages sustained by Plaintiffs as the direct, proximate and foreseeable result of the Defendants' negligent representation.

## COUNT III
### (RICO)

40. Mellon incorporates and realleges paragraphs 1 through 39 as though fully set out hereunder.

41. Mr. Gillespie is a culpable person and was associated with TIGHAR as its executive director.

42. TIGHAR constitutes an enterprise under the Racketeer Influenced and Corrupt Organizations Act (RICO).

43. In the course of the enterprise, TIGHAR has engaged in a pattern of racketeering activity for the unlawful purpose of intentionally defrauding Plaintiff.

44. Mr. Gillespie knowingly participated in TIGHAR's affairs, specifically the racketeering activity engaged in by TIGHAR.

45. Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple acts of wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341 and 1343 and has used both of these methods to solicit contributions for its expeditions.

46. Utilizing the mails and national wire facilities, TIGHAR made false representations to Mellon, to Andrew Sanger, to the Discovery Channel and others that the Earhart aircraft remained undiscovered. These representations were made with the express purpose of soliciting contributions and sponsorships. These solicitations took place in a number of states, including Wyoming, and had a direct impact on interstate commerce.

47. TIGHAR continues this pattern as it solicits ongoing donations for its planned expedition NIKU VIII.

48. TIGHAR'S pattern of racketeering has directly and proximately caused injury to the business and property of the Plaintiff, Mellon.

49. TIGHAR engaged in predicate acts including the solicitation of donations and fraudulent communications regarding its expeditions that were communicated both through the mails and telecommunications. These included faxed transmittals and the transfer of documents through the mail.

50. Following these predicate acts Mellon donated $1,046,843.00 to support the discovery of the Earhart aircraft. That donation was only made after and in light of fraudulent communications by TIGHAR that it had not yet discovered the aircraft.

## COUNT IV
### (Negligence)

51. Mellon incorporates and realleges paragraph 1 through 50 as though fully set out hereunder.

52. In the alternative to the above Counts, Defendants owed a duty of reasonable care to Mellon who, based on Defendants' own conduct, had an interest in the location of the Earhart aircraft and the NIKU VII expedition.

53. Defendants breached that duty when, based on the information Defendants had

gathered concerning the location of the Earhart aircraft, Defendants acted unreasonably and outside of their duty of care in the manner in which they conducted NIKU VII. This negligence included, but was not limited to, failing to utilize the information they had to conduct a reasonable search for the Earhart aircraft.

54. This unreasonable conduct, and breach of their duty of ordinary care, caused Mellon damages.

WHEREFORE, Mellon prays that this Court:

1. enter judgment in its favor against the Defendant in an amount to be proven at or prior to trial,

2. enter judgment providing for treble damages as permitted by 18 U.S.C. §1964(c),

3. enter a judgment awarding attorneys' fees and both prejudgment and post judgment interest,

4. award such other and further relief as shall be just and equitable.

DATED this 3rd day of June, 2013.

CROWLEY FLECK PLLP

By: _____
JEFF OVEN, Bar No. 6-3371
P. O. Box 2529
Billings, MT 59103-2529

TIMOTHY STUBSON, Bar No. 6-3144
152 North Durbin Street, Suite 220
Casper, WY 82601