John A. Masterson #5-2386
Alaina M. Stedillie #6-4327
Rothgerber Johnson & Lyons LLP
123 W. 1st Street, Suite 200
Casper, WY  82601
307-232-0222
307-232-0077 fax
jmasterson@rothgerber.com
astedillie@rothgerber.com

William J. Carter ISB#5295 *(Pro Hac Vice)*
Dean & Carter, PLLC.
1112 Main Street, #302
Boise, Idaho 83702
Phone: (208) 489-6004
Fax: (208) 246-6363
carter@dean-carterlaw.com

Counsel for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| TIMOTHY MELLON, a Wyoming resident, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13 CV 118-S |
| | ) | |
| THE INTERNATIONAL GROUP FOR | ) | |
| HISTORIC AIRCRAFT RECOVERY, a | ) | |
| Delaware non-profit corporation and | ) | |
| RICHARD E. GILLESPIE, | ) | |
| | ) | |
| Defendants. | ) | |

2004310048_1

**MEMORANDUM IN SUPPORT OF DEFENDANTS' *MOTION TO DISMISS COMPLAINT WITH PREJUDICE PURSUANT TO RULE  12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE***

**COME NOW** the Defendants, The International Group for Historic Aircraft Recovery (individually "TIGHAR") and Richard E. Gillespie (individually "Gillespie") (collectively "Defendants"), by and through their attorneys, John A. Masterson and Alaina M. Stedillie of Rothgerber Johnson & Lyons LLP, and William J. Carter of Dean & Carter, PLLC, and respectfully submit their *Memorandum in Support of Defendants' Motion to Dismiss Complaint With Prejudice Pursuant to 12(b)(6) of the Federal Rules of Civil Procedure*  in support of such Motion, filed concurrently herewith.

### Reservation of Rights and Objections

This *Memorandum in Support of Defendants' Motion to Dismiss Complaint With Prejudice Pursuant to 12(b)(6) of the Federal Rules of Civil Procedure* ("*Memorandum*") addresses purely legal issues related to the legal inadequacy of the Complaint.   While considering Defendants' *Motion to Dismiss Complaint With Prejudice Pursuant to 12(b)(6) of the Federal Rules of Civil Procedure* ("*Motion*"), this Court must assume Plaintiff's allegations, but not conclusions, to be true.   Nonetheless, Defendants unequivocally and adamantly deny each and every allegation of misconduct against them.   Neither TIGHAR nor Gillespie concede any of Plaintiff's allegations by the filing of the *Motion* and this *Memorandum*, and they specifically do not waive the right to object to, contest, and fully defend against any allegations made against them by Plaintiff.

## I.      Summary of the Argument

Plaintiff's Complaint against Defendants[1] consists of conclusory factual allegations and four theories of recovery (Count I – Fraud; Count II – Negligent Misrepresentation; Count III – violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 *et seq.*) ("RICO"); and Count IV – Negligence).  Each and all of the substantive claims fail to properly articulate the factual and legal requirements necessary under the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and Defendants therefore request dismissal of the Complaint.

The central conclusory premise upon which Plaintiff's entire Complaint rests is that Defendants discovered the wreckage of Amelia Earhart's aircraft during a 2010 expedition to the remote Southern Pacific island of Nikumaroro.  Plaintiff alleges that Defendants deliberately conspired (and somehow managed) to keep this discovery a secret in order to raise funds for future investigative expeditions to continue looking for the very aircraft Plaintiff alleges Defendants already found.  Plaintiff alleges that, as a contributor to and a participant in the 2012 expedition, he was duped into making a tax deductible contribution to TIGHAR through Defendants' alleged deceit.  Plaintiff's claim that Defendants discovered the aircraft in 2010[2] is based upon his review *after* the 2012 expedition of publicly-available underwater video recorded by TIGHAR in 2010[3] in which Plaintiff claims to see the Earhart Wreckage.[4]

---

[1]  It is unclear from the Complaint whether the named Defendant Richard E. Gillespie is charged individually or in his capacity as the Executive Director of TIGHAR.  Defendants believe this distinction is important for a number of reasons, but that this issue is beyond the scope of this *Motion*.  Nevertheless, Defendants reserve the right, if necessary, to challenge this aspect of the pleadings at the appropriate time.

[2]  Complaint, ¶¶ 15 and 16.

[3]  TIGHAR posted the 2010 underwater video to its Youtube Channel for public viewing on December 8, 2010.

[4]  For purposes of this *Memorandum*, "Earhart Wreckage" is intended to encompass and generally describe not only parts of the plane Plaintiff claims to see in underwater footage from the 2010 expedition, but other materials he

This *Memorandum* is divided into four substantive sections.  The first will address the overarching problem in the Complaint – its lack of specificity under the required standards as articulated by the United States Supreme Court in *Bell Atlantic Corporation, et al. v. Twombly, et al.* 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and subsequent authority of the Tenth Circuit.

The second section will address further inadequacies of the Complaint on a count by count basis.  Specifically, Plaintiff's fraud and Racketeer Influenced Corrupt Organization ("RICO") allegations fail as they do not meet heightened pleading requirements of "particularity" mandated by Fed. R. Civ. P. 9(b).  Plaintiff's RICO allegation further fails to allege the required "pattern of racketeering activity."  Plaintiff's negligent misrepresentation allegations are also insufficiently pled, factually inadequate and conclusory.  Finally, Plaintiff's negligence claim, apparently grounded on allegations that the entire 2012 NIKU VII expedition was negligently conducted, fails for a lack of factual support and the failure to articulate and support the legal standards required for a negligence claim.

This *Memorandum* concludes with citation to authority supporting dismissal of the Complaint based upon both Wyoming's long-recognized application of the Economic Loss Rule, and for sheer implausibility pursuant to the standards of *Twombly* and *Ashcroft*.

---

claims to see and claims to be associated with the Earhart expedition.  These include, but are not limited to, human remains, a toilet and toilet seat, a banjo and case, a violin and case, a guitar, and toilet paper rolls – all at ocean depths of up to 1,000 feet which have somehow remained intact underwater since 1937.

## II.    Factual Background

Born in Atchison, Kansas, in 1897, by the time of her attempted flight around the globe, Amelia Earhart was a renowned and admired public figure in the United States and around the world.[5]  Ms. Earhart had gained fame for numerous record-setting flights and her advocacy for women's rights.

In 1936, Ms. Earhart began to plan a circumnavigation of the globe.   The expedition was notable for any number of reasons, not the least of which was the fact that she intended to remain close to the equator, making the journey the longest such flight ever attempted – approximately 29,000 miles.  As would be expected, the flight captured attention around the world.

On May 20, 1937, Ms. Earhart, along with navigator Fred Noonan, began the circumnavigation, departing Oakland, California, and flying east in a twin-engine Lockheed Electra 10E Special.

On July 2, 1937, Ms. Earhart and Mr. Noonan took off from Lae, New Guinea, on the third-to-the-last leg of the journey.  Their intended destination was Howland Island – a trip of approximately 2500 nautical miles over open ocean.[6]  After refueling at Howland, Ms. Earhart and Mr. Noonan would fly to Hawaii and then back to the United States.

---

[5]  Source material on Ms. Earhart in general, as well as her accomplishments, is vast.  Thousands of books, articles, Internet sites, blogs, movies and television programs have been devoted to her life, as well as to her final expedition and disappearance.  This summary will not even attempt to give justice to her story and the theories that abound regarding her disappearance.  It is provided as only the briefest overview of pertinent information, presented to give context to the legal issues presented.

[6]  Howland Island is approximately 6,500 feet long and 1,600 feet wide.  An atoll, its highest point is approximately ten feet above sea level.

Ms. Earhart and Mr. Noonan never arrived at Howland Island.  The last confirmed radio transmission from them[7] indicated that they were low on fuel and flying a course in an attempt to find it.

When the plane was declared missing, air and sea searches found no trace of Ms. Earhart and Mr. Noonan.  The mystery of their disappearance remains unsolved, with no shortage of theories sponsored by different individuals and organizations.[8]

The International Group for Historic Aircraft Recovery ("TIGHAR") is a Delaware-based 501(c)(3) non-profit research foundation dedicated to promoting responsible aviation archaeology and historic preservation.  Since its founding by Richard E. Gillespie in 1985, TIGHAR's activities have included compiling and verifying reports of rare and historic aircraft surviving in remote areas, conducting investigations and recovery expeditions in cooperation with museums and collections worldwide and serving as a voice for integrity, responsibility and professionalism in the field of aviation historic preservation.[9]  TIGHAR's most prominent investigation, called "The Earhart Project," is a 25-year investigation that seeks to locate and preserve Amelia Earhart's aircraft and determine the fate of Ms. Earhart and Mr. Noonan.

---

[7]   As with so many facets of her disappearance, there are many disputes and different theories about radio transmissions received during this time.  Fortunately, they do not now appear to be a part of Plaintiff's claims.

[8]   Theories include, but are by no means limited to, that Ms. Earhart and Mr. Noonan crashed into the ocean; that their plane was shot down by the Japanese and taken prisoner or killed; that they deliberately diverted to undertake surveillance work for the United States and they were lost or captured; that they fled to New Zealand; and, relevant to this matter, that they made it to one of the small islands in the South Pacific and ultimately died of starvation, dehydration or disease.

[9]   See, generally, www.tighar.org.

TIGHAR's efforts on the Earhart Project have come to focus on the South Pacific island of Nikumaroro,[10] a small atoll approximately 3.7 miles by 1.2 miles in size, now part of the Phoenix Islands within the Republic of Kiribati.  TIGHAR's operating hypothesis is that, unable to find Howland Island and running low on fuel, Ms. Earhart and Mr. Noonan found and landed on Nikumaroro, where they survived for an unknown period of time before ultimately succumbing to starvation, dehydration or disease.

To facilitate its work on the Earhart Project and protect potentially historic archaeological sites and artifacts, TIGHAR negotiated and entered into an agreement with the Republic of Kiribati granting TIGHAR exclusive investigation, research, recovery, preservation and display rights for Ms. Earhart's aircraft within its territorial boundaries.[11]  Support for the Earhart Project comes from private donors, as well as from public partners, including among others, the Discovery Network, Lockheed Martin, the GeoEye Foundation, Photek Imaging and FedEx Corporation.

Plaintiff Tim Mellon is a farmer, airport owner and railroad executive.  He first contacted TIGHAR three months before TIGHAR's July 2012 NIKU VII expedition to Nikumaroro where TIGHAR planned to perform an underwater search for the Earhart aircraft. Mr. Mellon offered to fund approximately half of the expedition's $2,000,000 cost for the privilege of accompanying the expedition.

---

[10]  Nikumaroro was formerly known as "Gardner Island."
[11]  To date, TIGHAR has made a total of seven expeditions to Nikumaroro.  Relevant here are the 2010 NIKU VI and 2012 NIKU VII expeditions.

### III.      Insufficiency of the Complaint

The fundamental flaw in the Complaint is its failure to make sufficient factual allegations, a flaw that runs through every substantive claim in the Complaint.  As a result of this insufficiency, the Complaint fails to state a claim upon which relief can be granted, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. Pro. 8(a)(2) mandates that a pleading contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief."  The Rule does not require "detailed factual allegations," however it does require "more than an unadorned, the Defendant-unlawfully-harmed-me accusation."  *Ashcroft*, 556 U.S. at 678.  "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft, Id*. (citing *Twombly,* 550 U. S. at 555.)

Instead of making bare or conclusory statements, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft,* 556 U.S. at 697 (citing *Twombly,* 550 U. S. at 570.)  While a court "assumes the factual allegations are true and asks whether it is plausible that the plaintiff is entitled to relief," *Gallagher v. Shelton,* 587 F. 3d. 1063, 1068 (10th Cir. 2009), it is not bound to presume the truthfulness of conclusory allegations.  *Ashcroft,* 556 U.S. at 681.  Indeed, a court does not extend the presumption of truth to legal conclusions:  "the tenant that a court must accept as true all of the allegations contained in a compliant is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* at 678.  *See also Bixler v. Foster,* 596 F. 3d. 751, 756 (10th Cir. 2010).

Fed. R. Civ. P. 12(b)(6) mandates dismissal where there is a "failure to state a claim upon which relief can be granted."  Failure to state a claim can arise from the failure of a legal theory or factual sufficiency.  For example, and consistent with the Supreme Court's *Twombly* analysis, the 9th Circuit has stated that a court must dismiss a claim if there is a "lack of any cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Each substantive count in the Complaint fails to state claims upon which relief can be granted because each is unsupported by any well-pled factual allegations, which as a matter of law are not entitled to the assumptions of truth.  Plaintiff's Complaint consists entirely of precisely what *Twombly* and *Ashcroft* forbade: "threadbare recitations of the elements of a cause of action" supported only by conclusory statements, which as a matter of law are insufficient to withstand a motion to dismiss under Rule 12(b)(6).  *Ashcroft,* 556 U.S. at 678.  Specific examples of such conclusory statements abound.  Below are such examples.

Count I – fraud:

- "TIGHAR knowingly and intentionally misrepresented the status of its exploration and investigation into the Earhart aircraft to Mellon."  Complaint at ¶ 27.

- "These representations were material and were reasonably relied upon by Mellon…"  Complaint at ¶ 28.

Count II – negligent misrepresentation:

- "TIGHAR failed to exercise reasonable care and competence in the review of the information obtained from its prior expeditions…"  Complaint at ¶ 37.

    Count III – RICO:

- "Mr. Gillespie is a culpable person…."  Complaint at ¶ 41.

- "TIGHAR constitutes an enterprise…"  Complaint at ¶ 42.

- "…Defendants committed multiple acts of wire fraud and mail fraud…"  Complaint at ¶ 45.

    Count IV – negligence:

- "…Defendants owed a duty of reasonable care…"  Complaint at ¶ 52.

- "…Defendants breached that duty…"  Complaint at ¶ 53.

- "…Defendants acted unreasonably and outside their duty of care…"  Complaint at ¶ 53.

The above examples (in addition to being conclusory), also fail to show the detail necessary to avoid dismissal.

Based upon the above, the Complaint should be dismissed.

**IV.    Insufficiency of the Individual Substantive Counts.**

In addition to, yet intertwined with the defects noted above are specific, fatal shortcomings with each substantive count.

**A.    Fraud and RICO Particularity.[12]**

Fraud consists of well-known elements:

---

[12]  As will be seen, both Plaintiff's fraud and RICO allegations require review under the heightened "particularity" standard.  The legal analysis for both claims is therefore combined.

> [T]he common thread among ... these crimes is the concept of "fraud." Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury.  (Citation omitted.)  *Failure to adequately allege any one of the nine elements is fatal to the fraud claim.*  (Emphasis supplied.)

*Tal v. Hogan*, 453 F. 3d 1244, 1263 (10th Cir. 2006).

Fed. R. Civ. P. 9(b) requires the facts underlying an alleged fraud to be pleaded with specificity.  This particularity requirement is a time-honored mandate that has been repeatedly addressed and interpreted by the courts: "The purpose of Rule 9(b) is to inhibit the filing of complaints as a pretext to discover unknown wrongs, to protect the defendant's reputation, and to give notice to the defendant regarding the complained of conduct."  *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).

"Simply stated, a complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, at 1252 (1997), citing *Lawrence National Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, at 180 (10th Cir. 1991).  Thus, under Rule 9(b), a complaint "may still suffice so long as the court can plausibly infer the necessary unarticulated assumptions" *Bryson v. Gonzalez*, 534 F.3d 1282, at 1286 (10th Cir. 2008).  A plaintiff is "required to plead sufficient facts to create a reasonable inference of reliance." *Hitch Enterprises, Inc. v. Cimarex Energy Co.*, 859 F.Supp.2d 1249, at 1261 (W.D.Okla. 2012), citing *Ashcroft*, 556 U.S. at 678, and *Bryson*, *supra* at 1286.  Courts have repeatedly warned that parties should not be allowed to use vague, conclusory pleadings –

especially when asserting fraud – to commence long and expensive litigation.  "In accordance with Rule 9(b), Plaintiffs must 'set forth the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof.'"  *Brooks v. Bank of Boulder*, 891 F. Supp 1469, 1476 (D.Colo. 1995), citing *Ambraziunas v. Bank of Boulder*, 846 F.Supp. 1459, 1462 (D.Colo. 1994).

RICO claims, as well as their required predicate acts, also require particularity.  *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F. 2d 982 (10th Cir. 1992).  The rationale here is similar to, though perhaps more serious than, the requirements for fraud:

> [b]ecause [RICO] is a complicated statute that covers conduct ranging from sports bribery to white slave traffic, a defendant needs a substantial amount of information to prepare a response.  A RICO defendant also needs to be protected from unscrupulous claimants lured by the prospect of treble damages, and it should be the policy of the law, within the procedural constraints of our system, to provide that protection.  A charge of racketeering, with its implications of links to organized crime [and attendant consequences to a person's reputation and goodwill], should not be easier to make than accusations of fraud.  TICO should not be construed to give a pleader license to bully and intimidate nor to fire salvos from a loose cannon.

*Saine v. A.I.A., Inc.*, 582 F. Supp 1299, 1306 n. 5 (D. Colo. 1984).

The pleading must contain the details and circumstances of the fraud and state facts, not just the bare-boned elements of fraud – not only in the allegations themselves, but in the RICO predicate acts.  "Claims for wire fraud as a RICO predicate must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)."  (Citation omitted.)  Rule 9(b) requires a plaintiff to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'  (Citation omitted.)"  *Internet Archive v. Shell, et al.*, 505 F. Supp. 2d 755, at 768 (D. Colo. 2007).

Here, Plaintiff makes no attempt to articulate the time, place and contents of any representations, who made them, and the consequences of them.  Even a cursory review of the fraud and RICO counts demonstrates their patent insufficiency.  For example, the fraud claim does *not* set forth facts supporting:

- How, when, where and by whom "TIGHAR knowingly and intentionally misrepresented the status of its exploration and investigation into the Earhart aircraft to Mellon." Complaint at ¶ 27.  Indeed, the Plaintiff is the only person who has ever asserted that TIGHAR located Ms. Earhart's aircraft.  Prior to Plaintiff's assertions, there are no allegations that TIGHAR, Gillespie or anyone else has ever made any announcement or reached any conclusion with respect to the 2010 underwater video, let alone finding -  or not finding – the Earhart Wreckage.

- How, why and which such representations "were material and were reasonably relied upon by Mellon."  Complaint at ¶ 28.

- What the representations actually were.

The RICO allegations fare no better.  They, for example, do *not* set out facts establishing:

- How and why Mr. Gillespie is a "culpable person" under RICO.  Complaint at ¶ 41.

- How and why TIGHAR "constitutes an enterprise" under RICO.  Complaint at ¶ 42.

- How TIGHAR "engaged in a pattern of racketeering activity" under RICO.  Complaint at ¶ 43.

- Any specifics (time, date, nature of communication, its author, etc.) regarding the alleged "multiple acts of wire fraud and mail fraud."  Complaint at ¶ 45.

Plaintiff's allegations about the RICO predicate acts, however, are perhaps most lacking. They also require particularity. *Cayman Exploration Corporation v. United Gas Pipe Line Company*, 873 F.2d 1357, at 1362 (10th Cir. 1989). There are no times, dates or descriptions of any mail or wire communications in Plaintiff's Complaint. In *Seidl v. Greentree Mortgage Company*, the Court went even further, holding that when a predicate act is wire fraud (as here), the Plaintiff must state the specific number of wires, the precise dates and how they were used to further the activity. *See* 30 F. Supp. 2d 1292, 1304 (D. Colo. 1998), citing *Brooks*, *supra* at 1477.

In Plaintiff's Complaint, no details or "circumstances" are pled regarding fraud, RICO or the RICO predicates. Obviously, one would expect the Plaintiff to be aware of these facts, and extensive discovery should not be necessary to articulate them. Due to these fundamental failings, Plaintiff's fraud and RICO claims should be dismissed.

**B.     Negligent Misrepresentation**

As an alternative to his fraud and racketeering allegations, Plaintiff claims another theory through Count II: negligent misrepresentation. Unlike Plaintiff's fraud and RICO theories which are premised on the notion that Defendants *found the aircraft* and concealed that finding, Plaintiff accuses Defendants of *failing to find* the Earhart Wreckage in the underwater video footage taken during the 2010 NIKU VI expedition. The Plaintiff's theory seems to be that Defendants were negligent in failing to discover the Earhart Wreckage, told Plaintiff they had not found it, and therefore Plaintiff's donation to TIGHAR should be returned.

Still, these allegations fail, as they do not provide the specificity to bring rise to a cause of action, let alone permit the Defendants to craft a responsive answer.  For example, there is no recitation of what the Defendants did to view and analyze the footage, nor is there an articulation of how or why that process was negligent.   Indeed, there is not even a statement of what process was used.   There is also no indication as to what the Defendants *should have done* to have satisfied Plaintiff.   Count II is nothing more than the "Defendant-unlawfully-harmed-me accusation" that the Supreme Court has admonished against.  *Ashcroft,* 556 U.S. at 678.

Further, as noted in the discussion regarding the negligence claim (see Section D, below), and incorporated herein as to these negligent misrepresentation allegations, there is no articulation of the duty (if any) the Defendants owed the Plaintiff.  Plaintiff merely made a tax deductible contribution to a nonprofit to help defray expenses associated with the 2012 NIKU VII expedition.  This failure also supports dismissal.

Finally, comparing the allegations as pled in this claim with the relevant section of the 2011 Wyoming Civil Pattern Jury Instructions (§ 17.04), one can track the required elements and the suggested language.   When this comparison is made, then combined with the failure to articulate supportive facts, it is clear this claim is nothing more than the "formulaic recitation of the elements of a cause of action" which "will not do."   *Ashcroft,* 556 U.S. 678 (*quoting Twombly,* 550 U. S. at 555.  This claim should therefore be dismissed.

### C.    RICO

To successfully plead a RICO violation, Plaintiff must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Robbins v. Wilkie*, 300 F. 3d 1208 (10th Cir. 2002), citing *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, at 496 (1985); *BancOklahoma Mortgage Corp. v. Capital Title Co. Inc.,* 194 F.3d 1089, at 1100 (10th Cir.1999).

In addition to the factual and "particularity" shortcomings previously referenced in Section IV(A) herein and incorporated by this reference, the RICO allegations fail under the "pattern" element.  In *H.J. Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229 (1989), the Court stated that "[t]o establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity."  (Emphasis in original.)  *Id*. at 240.  Plaintiff makes one vague and unsupported allegation that the behavior is ongoing, stating at ¶ 47 of his Complaint: "TIGHAR continues this pattern as it solicits ongoing donations for its planned expedition NIKU VIII."  This allegation is not sufficient to establish anything, let alone the "pattern" required by RICO.

### D.    Negligence

In evaluating Plaintiff's negligence claim, it is critical to remember that this claim is based upon allegations completely separate from those underlying the balance of the Complaint. The negligence allegation does *not* go to the alleged finding or not finding of the Earhart Wreckage – at least as now pled in the Complaint.  These negligence allegations go to the conduct of the 2012 NIKU VII expedition *itself*, and fail for two reasons: factual insufficiency and failure to establish a duty.

### 1. Factual Insufficiency

The initial problem with this negligence allegation is its factual insufficiency. The allegation consists of three separately numbered ¶¶ consisting of four conclusory statements. These statements are unsupported by facts, and at best are simple recitation of the elements of a cause of action that the Supreme Court has found insufficient. *Ashcroft*, 556 U.S. 678, citing *Twombly*, 544 U.S. at 555.

So what, then, is alleged about the 2012 NIKU VII expedition? The only references in the Complaint to the 2012 NIKU VII expedition are found in ¶¶ 16, 17, 22 and 23 of the Complaint. ¶¶ 16 and 17 reference the expedition only to note that after the 2010 NIKU VI expedition, NIKU VII was being planned. ¶ 23 only references the 2012 NIKU VII expedition in the context of Plaintiff's donation to it, and ¶ 23 simply notes the departure date of the NIKU VII from Hawaii on July 3, 2012. No details or criticism of NIKU VII is offered until the sudden, unsignaled right turn of Count VI.

Plaintiff's Complaint fails to articulate any specific acts of negligence allegedly committed by Defendants or the details of any such acts, such as when or where they took place. These are not inconsequential omissions. For example, Plaintiff does not allege any facts supporting the conclusory assertion that "Defendants acted unreasonably." Complaint at ¶ 53. The Defendants cannot know from the Complaint what Plaintiff feels was "unreasonable" in the conduct of the expedition. Was it insufficient food and fuel? Insufficient time on site? A lack of planning and coordination? Insufficient staffing and support? Was the amount of equipment brought insufficient or of the wrong type? Was the expedition insufficiently founded? The

participants untrained?  Was there inadequate expertise or the wrong kind?  And who, exactly, was negligent?  Was it the Defendant Mr. Gillespie?  The captain of the ship?  One or more the crew?  There is literally no way to know what actions, or inactions, Plaintiff is criticizing in Count IV, let alone enough to allow the Defendants to be put on notice and craft a meaningful response.  Without "sufficient factual matter," Count IV simply cannot stand.  *Ashcroft*, 556 U.S. at 678.

Plaintiff's other allegations fare no better.  The allegation that "Defendants acted unreasonably and outside of their duty of care" (Complaint at ¶ 53) patently fails, on its face, to articulate any facts upon which to base a claim.  Therefore, the negligence claim fails as to the Defendants.

## 2. Duty

Negligence requires establishing a duty, a breach of that duty, proximate cause and damages resulting from that breach.  *Formisano v. Gaston*, 2011 WY 8, ¶ 15, 246 P.3d 286, 290 (Wyo. 2011) (additional citations omitted).  "Absent a duty, there is no actionable negligence claim."  *Sorensen v. State Farm Automobile Ins. Co*, 2010 WY 101, ¶ 11, 234 P.3d 1233, 1236 (citing *Bowen v. Smith*, 838 P.2d 186, 198 (Wyo. 1992)).

Plaintiff has failed to set forth the facts upon which to base his conclusion that "Defendants owed a duty of reasonable care to Mellon who, based on Defendant's own conduct, had an interest in the location of the Earhart aircraft and the NIKU VII expedition."  Complaint at ¶ 52.  Based upon the Complaint, Mr. Mellon was a donor to a charitable cause, TIGHAR is a non-profit organization undertaking efforts to find the Earhart Wreckage that accepted his

generosity, and Mr. Gillespie is TIGHAR's Executive Director who communicated with Plaintiff.  These facts do not establish what kind of duty might have been created, and Plaintiff fails to articulate what any duty might be.

Without an articulated duty, there can be no negligence.  Here, no duty has been articulated, so the Complaint must fail.

**V.     The Economic Loss Rule**

Wyoming's Supreme Court discussed the Economic Loss Rule in *Rissler & McMurry Company v. Sheridan Area Water Supply Joint Powers Board*, 929 P.2d 1228 (Wyo. 1996).   In that case, the Court affirmed the dismissal of a contractor's negligence claims against an engineer, holding that the engineer's duty to the contractor, if any, arose from the contractual relationship between the parties.   While the *Rissler* opinion was in the context of a written contract between those parties, the underlying rational for applying the economic loss rule is as applicable in this matter as it was to that decision:

> The "economic loss rule" bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property. (Footnote omitted.)  The purpose of the "economic loss rule" is to maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles."

*Id*. at 1234 – 1235.

While there is no written contract between Plaintiff and Defendants pled here, a written contract is not necessary to invoke the Economic Loss Rule.  In *D & D Transport, Ltd. V. Interline Energy Services, Inc.*, the Wyoming Supreme Court upheld the application of the Economic Loss Rule in the context of a third-party negligence claim.  2005 WY 86, ¶ 13, 117 P.

3d 423, 427.  In *Excel Construction, Inc. v. HKM Engineering, Inc.*, Wyoming has affirmed its application of the Economic Loss Rule.  2010 WY 34, 228 P. 3d 40 (Wyo. 2010).

The Plaintiff here seeks relief in traditional tort claims of fraud, negligent misrepresentation and negligence, as well as through the application of the civil remedy provisions of RICO.  Yet any remaining claims Plaintiff may have seek only monetary damages for relief.  There are no claims based upon personal physical or mental injuries.  Through the application of the economic loss rule, Plaintiff's claims cannot properly be addressed by tort claims, and the Complaint should be dismissed.

## VI.    Patent Implausibility

This Court will seldom see a case come before it in which it is argued that the factual allegations in it are so strained, so contrary to logical thinking and so contrary to the human condition as to warrant summary dismissal.  This, however, is one of those cases.  This Court has the authority to dismiss a complaint for sheer factual implausibility.  *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 556, 557 & 570.

To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Id.*, and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; see also *Ashcroft*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so

that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery."  See, e.g., *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011).

Plaintiff's central allegation is that TIGHAR discovered the whereabouts of Ms. Earhart's aircraft during its NIKU VI expedition in 2010 and that TIGHAR was able to conceal this discovery from the world.  Aside from being false, this allegation is not "plausible on its face." *Ashcroft,* 556 U.S. at 678 (2009), and the outright dismissal of the Complaint is justified.

What must be believed to allow this matter to go forward is a chain of events, conspiracy, decision-making and actions that defies all logic.  To have made such a historic discovery and conceal that finding from the world, TIGHAR would have had to orchestrate an implausibly massive plot involving the crews and owners of two vessels used to support the 2010 NIKU VI expedition, a film crew from the Discovery Channel who video recorded the complete expedition, and executives and editors at Discovery Channel who took possession of all the 2010 NIKU VI raw footage to produce two hour documentary broadcast nationwide by the Discovery Channel in December 2010.  Defendant's "plot" must also include approximately twenty of TIGHAR's own members directly involved in the 2010 NIKU VI expedition, all of TIGHAR's 500+ members, the general public that follows TIGHAR's research, TIGHAR's board of directors, representatives in the government of the Republic of Kiribati, including the Kiribati customs representative who accompanied the 2010 NIKU VI expedition.  Additional participants

would be the State Department of the United States, Doctor Robert Ballard,[13] then-United States Secretary of State Hillary Clinton,[14] then-United States Secretary of Transportation Ray LaHood, the third party owner/operator of the remote operated vehicle (ROV) with whom TIGHAR contracted to explore the underwater reef slope at Nikumaroro and record the underwater footage during NIKU VI (Seabotix, Inc.), TIGHAR's forensic experts who examined the NIKU VI ROV footage[15], and experts at the New England Aquarium.  Finally, given that TIGHAR publicly posts its materials on the Internet, it is inconceivable that such a broad conspiracy could be maintained, let alone attempted.

Plaintiff's theory also ignores that the most significant way for TIGHAR to solicit funds is not to continue looking for the Earhart wreckage, but to find it.  Human experience tells us that the most fruitful source of funds would be from selling books, movies and television programs based on the discovery, and that TIGHAR would benefit the most by the publicity it would receive from announcing the answer to a mystery that has long captured the imagination and interest of the public.[16]

Finally, Plaintiff's theory fails, as it overlooks the reality that fundraising for recovery efforts would be far more lucrative than fundraising for continued search efforts.  Since the

---

[13] Dr. Ballard (retired) was the senior scientist and director of the Center for Marine Exploration at the Woods Hole Oceanographic Institution.  Dr. Ballard is presently an explorer-in-residence for the National Geographic Society and a commissioner on the U.S. Commission on Ocean Policy.  There is no allegation or evidence that Dr. Ballard disagreed with any conduct or conclusion of TIGHAR's.

[14] Secretary Clinton and Secretary LaHood held a press briefing in March 2012, honoring Women's History Month and endorsing TIGHAR's work to discover the whereabouts of Ms. Earhart.

[15] Obviously, these forensic experts concluded the footage showed no discernible aircraft wreckage.

[16] It should be noted that TIGHAR is a non-profit corporation, so funds raised or profits made from any commercial activity go to TIGHAR for the benefit of its programs.

allegation central to all counts in Plaintiff's Complaint is not plausible, all four counts fail as a result.  Dismissal of the Complaint, with prejudice, is warranted and proper.

**VII.    Conclusion**

Fed. R. Civ. P. 8(a)(2) requires sufficient factual and legal requisites must be met for a complaint to avoid outright dismissal under Fed. R. Civ. P. 12(b)(6).  Plaintiff's Complaint fails to state a claim upon which relief can be granted, and dismissal of it is justified and appropriate.

Wyoming's Economic Loss Rule, and the utter implausibility of his allegations further justify ending this case now, before the resources of a non-profit are drained by unnecessary litigation and reputational disparagement.

Plaintiff comes to this Court pleading serious and significant charges against the Defendants.  Allowing the allegations to proceed should not be permitted.  To make such implausible allegations, especially in the absence of articulated and factually well-plead allegations should not be permitted or counseled.  Defendants respectfully pray that this Court dismiss the Plaintiff's Complaint with prejudice.

**DATED** this 22nd day of July, 2013.

> THE INTERNATIONAL GROUP FOR HISTORIC AIRCRAFT RECOVERY and RICHARD E. GILLESPIE
>
>
> By        /s/
>         John A. Masterson  #5-2386
>         Alaina M. Stedillie  #6-4327
>         Rothgerber Johnson & Lyons LLP
>         123 W. 1st Street, Suite 200
>         Casper, WY  82601

307-232-0222
307-232-0077 fax
jmasterson@rothgerber.com
astedillie@rothgerber.com

William J. Carter ISB#5295 *(Pro Hac Vice)*
Dean & Carter, PLLC.
1112 Main Street, #302
Boise, Idaho 83702
Phone: (208) 489-6004
Fax: (208) 246-6363
carter@dean-carterlaw.com


Counsel for Defendants


# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of June, 2013, a true and correct copy of the foregoing was electronically served upon all parties registered as CM/ECF users in this case via the Court's CM/ECF electronic mail service including the following:

Jeff Oven                                     Timothy Stubson
Crowley Fleck PLLP                            Crowley Fleck PLLP
P.O. Box 2529                                 152 N. Durbin, suite 220
Billings MT  59103-2529                       Casper, WY  82601
joven@crowleyfleck.com                        tstubson@crowleyfleck.com


      /s/
Rothgerber Johnson & Lyons LLP