Jeff Oven, Bar No. 6-3371
CROWLEY FLECK PLLP
490 North 31st Street, Suite 500
P.O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
joven@crowleyfleck.com

Timothy Stubson, Bar No. 6-3144
CROWLEY FLECK PLLP
152 N. Durbin, Suite 220
Casper, WY 82601
Telephone: (307) 265-2279
Facsimile: (307) 265-2307
tstubson@crowleyfleck.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TIMOTHY MELLON, a Wyoming resident, | )  Cause No.:  13-CV-118-SWS |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| THE INTERNATIONAL GROUP FOR | ) |
| HISTORIC AIRCRAFT RECOVERY, a | )  **MEMORANDUM IN** |
| Delaware non-profit corporation and | )  **OPPOSITION TO DEFENDANTS'** |
| RICHARD E. GILLESPIE, | )  **MOTION TO DISMISS** |
| | ) |
| Defendants. | ) |

_____

Comes Now the Plaintiff, by and through his attorneys Crowley Fleck, PLLP and

provides the following in opposition to Defendants' motion to dismiss.

## I.
## Introduction

The defendants The International Group for Historic Aircraft Recovery ("TIGHAR") and

Richard E. Gillespie ("Gillespie") presently move to dismiss the plaintiff's Complaint with

prejudice pursuant to Rule 12(b)(6), Fed.R.Civ.P.  For the reasons and grounds which follow, the motion should appropriately be denied.

## II.
## The Allegations in the Complaint Plainly Satisfy Federal Pleading Standards Under Rules 8(a) and 9(b), and *Twombly/Iqbal*.

### A.        Applicable Pleading Standards.

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a complaint need only set forth a "short and plain statement of the claim showing the pleader is entitled to relief," and it "does not require 'detailed factual allegations.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)(*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Nevertheless, a plaintiff must set forth more than "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 678 (*quoting Twombly*, 550 U.S. at 555).  The allegations must rise above the level of mere speculation, but need only "raise a reasonable expectation that discovery will reveal evidence of" a basis for liability.  *Twombly*, 550 U.S. at 555-56.  Even if a "savvy judge" believes that actual proof of the facts alleged is improbable, or that recovery is "very remote and unlikely," a pleading should still survive dismissal.  *Id*. at 556.

In order to avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  A complaint "does not need detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009)(*quoting Twombly*, 550 U.S. at 555).

> The concept of "plausibility" at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true. The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law.

*Christy Sports*, 555 F.3d at 1191-92 (*citing Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

### B.   The Complaint Asserts a Plausible Claim for Fraud Under Wyoming Law.

"In order to prevail on a common law fraud allegation under Wyoming law, a plaintiff must prove (1) that the defendant made a false representation to induce action, (2) that the plaintiff relied upon the representation to his detriment, and (3) that the plaintiff reasonably believed the representation to be true." *Ravenswood Inv. Co., L.P. v. Bishop Capital Corp.*, 374 F.Supp.2d 1055, 1065 (D.Wyo. 2005)(*citing Halliburton Co. v. Claypoole*, 868 P.2d 252, 256 (Wyo. 1994)). In addition, Rule 9(b), Fed.R.Civ.P., provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). "The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be "simple, concise, and direct, . . . and to be construed as to do substantial justice." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).

The fraud allegations in the Complaint plainly satisfy these pleading requirements. It is alleged that, in 2010, TIGHAR undertook an expedition to the island of Nikumaroro. Compl., ¶ 14. During that expedition, significant video footage of the waters surrounding Nikumaroro was obtained, including footage of the wreckage of the Lockheed Electra flown by Amelia Earhart when she disappeared in 1937. *Id*. at ¶ 15. TIGHAR did not disclose the discovery, but instead began to plan and fund-raise for its next expedition in NIKU VII. *Id*. at ¶ 16.

- 3 -

It is further alleged that, on or about March 22, 2012, the defendant Gillespie spoke with plaintiff by phone, and discussed the possibility that plaintiff might contribute to funding NIKU VII.  Compl., ¶ 19.  Gillespie followed up by fax and by mail and communicated to plaintiff in Wyoming that the Earhart aircraft had not been located.  *Id*. at ¶ 20.  It is alleged that, during additional conversations between Gillespie and plaintiff, Gillespie represented that the Earhart wreckage had not been found and expressed optimism that by utilizing additional tools a discovery was possible during the NIKU VII expedition.  *Id*. at ¶ 21.  Based upon TIGHAR's representations, plaintiff contributed stock having a value of $1,046,843.00 to help fund the NIKU VII expedition.  *Id*. at ¶ 22.

Count I, the fraud claim, incorporates all the foregoing factual allegations in accordance with Fed.R.Civ.P. 10(c), which provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading . . . ."[1]  Therein, it is alleged that TIGHAR represented that the aircraft had not been located and that additional funding and efforts were needed to locate the aircraft.  Compl., ¶ 27.  It is alleged that those representations were material and were reasonably relied upon by plaintiff in making his decision to contribute to TIGHAR's proposed expedition.  *Id*. at ¶ 28.  It is alleged that, based upon those representations, plaintiff pledged and did contribute $1,046,843.00 to support the NIKU VII expedition.  *Id*. at ¶ 29.  It is alleged that plaintiff's reasonable reliance on such representations has directly, proximately and foreseeably caused plaintiff's damages.  *Id*. at ¶ 30.

---

[1] In challenging the sufficiency of the claims in this case, the defendants rely solely on mere snippets and ignore other allegations contained in the Complaint.  *See* Memorandum in Support, pp. 9-10, 13-14, 16-17.  This is improper.  *See Nolan Bros. Inc. v. United States*, 266 F.2d 143, 146 (10th Cir. 1959)(noting that the sufficiency of a complaint must be judged by the complaint in its entirety, rather than in a piecemeal fashion); *see also Celestial Seasonings*, 124 F.3d at 1253 (fraud claim could satisfy requirement that fraud be pled with particularity by incorporating by reference all paragraphs appearing elsewhere in complaint).

Rule 9(b) "does not require that a complaint set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid." *Celestial Seasonings*, 124 F.3d at 1253. "Instead, Rule 9(b) requires that the pleadings give notice to the defendants of the fraudulent statements for which they are responsible." *Id*. A cursory review of the allegations gives Defendants clear notice of the fraudulent statements that are alleged, who they were made to, when they were made and in what form they were made.   The fraud allegations in the Complaint plainly satisfy the applicable requirements.

### C.     The Complaint Asserts a Plausible Claim for Negligent Misrepresentation Under Wyoming Law.

"Under Wyoming law, the elements of negligent misrepresentation are as follows:  (1) defendant gave plaintiff false information in a transaction in which defendant had a pecuniary interest;  (2)  defendant gave the false information to plaintiff for the guidance of plaintiff in plaintiff's business transactions;  (3)  defendant failed to use reasonable care in obtaining or communicating the information;  (4)  plaintiff justifiably relied on the false information supplied by defendant; and (5) as a result of plaintiff's reliance, plaintiff suffered economic damages." *Wyoming Sugar Growers, LLC v. Spreckels Sugar Co., Inc.*, ____ F.Supp.2d ____, 2012 WL 7447081, at *3 n.2 (D.Wyo. 2012)(*citing Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 656 (Wyo. 2003)).  The elements of a negligent misrepresentation claim under Wyoming law are adequately pled in the Complaint.

In addition to incorporating the preliminary facts common to all claims, Count II, the negligent misrepresentation claim, asserts that, prior to plaintiff's donation, TIGHAR represented that its search for the Earhart aircraft was unsuccessful and that additional efforts were needed to discover the aircraft.  Compl., ¶ 33.  It is alleged that at the time it made the

representations, TIGHAR had a pecuniary interest in the transaction with plaintiff.  *Id*. at ¶ 34.  It is alleged that TIGHAR made such representations in the regular course of its business, and made such representations for the purpose of persuading plaintiff to make a contribution to its efforts.  *Id*. at ¶ 35.

It is further alleged that at the time TIGHAR made such representations, they were false, as it had filmed the wreckage of the aircraft during the course of its prior expedition in 2010.  Compl., ¶ 36.  It is alleged that TIGHAR failed to exercise reasonable care and competence in the review of information obtained from its prior expeditions which demonstrated the representations made by TIGHAR to be false.  *Id*. at ¶ 37.  It is alleged that plaintiff reasonably and justifiably relied on the representations to his detriment and made a contribution in reliance upon the misrepresentations.  *Id*. at ¶ 38.

Finally, it is alleged that plaintiff sustained damages as the direct, proximate and foreseeable result of the defendants' negligent misrepresentations.  Compl. ¶ 39.  In sum, the negligent misrepresentation claim clearly passes muster under federal pleading standards.

### D.  The Complaint Asserts a Plausible Claim Under RICO.

To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a civil RICO claim must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009).  "A 'pattern of racketeering activity' requires at least two acts of racketeering activity."  *Id*. at 867.  Those acts, commonly referred to as "predicate acts," must be violations of certain statutes.  *Id*. at 867 (*citing* 18 U.S.C. § 1961(1)).  In order to satisfy RICO's pattern requirement, a plaintiff must "allege not only that the defendants had committed two or more predicate acts, but also 'that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Id*. at

867 (*quoting H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)).

A RICO claim is adequately asserted in the Complaint.  In addition to incorporating the preliminary facts common to all claims, Count III, the RICO claim, alleges that TIGHAR is an enterprise as defined by RICO.[2]  Compl., ¶ 42.  It is alleged that in the course of the enterprise, TIGHAR has engaged in a pattern of racketeering activity for the unlawful purpose of intentionally defrauding plaintiff.  *Id.* at ¶ 43.  It is alleged that Gillespie, TIGHAR's Executive Director, is a culpable person who knowingly participated in the racketeering activity engaged in by TIGHAR.  *Id.* at ¶¶ 41, 44.

It is further alleged that, in furtherance of their fraudulent scheme of soliciting contributions for its expeditions, the defendants committed the predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.  Compl., ¶ 45.  Because the particularity requirement of Rule 9(b), Fed.R.Civ.P., applies to claims of mail and wire fraud, *see Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006), and in addition to the preliminary facts common to all claims in paragraphs 9-25, it is alleged that on March 22, 2012, and the months immediately following, Gillespie and TIGHAR utilized the mails and national wire facilities, and made false representations to plaintiff and others that the Earhart aircraft remained undiscovered.  *Id.* at ¶¶ 46, 49.  It is alleged that these representations were made with the express purpose of soliciting contributions and sponsorships, and that these solicitations took place in a number of states, including Wyoming, and had a direct impact on interstate commerce.  *Id.*

---

[2] A RICO enterprise is broadly defined as "any individual, partnership, corporation, association, or other legal entity . . . ."  18 U.S.C. § 1961(4).

The allegations also satisfy RICO's "pattern" requirement.  It is alleged that TIGHAR's pattern of racketeering is continuing in that TIGHAR continues to solicit donations for its upcoming expedition, which it entitles NIKU VIII.  *See* Compl., ¶ 47  ("TIGHAR continues this pattern as it solicits ongoing donations for its planned expedition NIKU VIII.").  Finally, it is alleged that TIGHAR's pattern of racketeering activity has directly and proximately caused injury to the business and property of the plaintiff.  Id. at ¶ 48.

Specifically, it is alleged that following the defendants' predicate acts, plaintiff donated $1,046,843.00 to support the discovery of the Earhart aircraft, and that such contribution was only made after and in light of the fraudulent communications by Gillespie and TIGHAR that it had not yet discovered the aircraft.  *Id*. at ¶ 50.  *See Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007)("[A] plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of [18 U.S.C.] § 1962.").  In sum, a RICO claim is adequately asserted in the Complaint.

**E.**   **The Complaint Asserts a Plausible Claim for Negligence Under Wyoming Law.**

Under Wyoming law, "[t]he elements of negligence are (1) a duty, (2) a violation thereof, (3) which violation is the proximate cause of, (4) injury to the plaintiff."  *Glover v. Transcor America, Inc.*, 57 F.Supp.2d 1240, 1245 (D.Wyo. 1999)(*quoting Daily v. Bone*, 906 P.2d 1039, 1043 (Wyo. 1995)).  The elements of a claim for negligence under Wyoming law are adequately pled in the Complaint.[3]

---

[3] As they have continually done in their supporting memorandum, the defendants improperly contend that the negligence allegations are insufficient by focusing solely on the specific allegations in Count IV and ignoring all other allegations in the Complaint.  *See* Memorandum in Support, p. 17 ("The [negligence] allegations consist of three separately numbered ¶¶ consisting of four conclusory statements.").

In addition to incorporating the preliminary facts common to all claims, Count IV, the negligence claim, asserts that defendants owed a duty of reasonable care to plaintiff who, based on defendants' own conduct, had an interest in the location of the Earhart aircraft and the NIKU VII expedition.  Compl., ¶ 52.  Under Wyoming law, "[a] duty of care 'may arise by contract, statute, common law, **or when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff**.'"  *Rice v. Collins Communication, Inc.*, 2010 WY 109, ¶ 10, 236 P.3d 1009, 1014 (Wyo. 2010)(citation omitted)(emphasis added).  While the existence of a duty is a question of law and squarely within the Court's power to decide, it is a question whose answer must rest on a factual foundation.    The question of whether the relationship between two parties gives rise to a duty is a question of:

> whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other – or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant.

*Thomas By Thomas v. South Cheyenne Water and Sewer Dist.,* 702 P.2d 1303, 1307 (Wyo. 1985).

Here, the allegations are clear.  Based on the relationship which was created between plaintiff and the defendants, and the $1,046,843.00 contribution which plaintiff made in reliance on their representations in this matter, the defendants had a duty to use reasonable care in conducting the NIKU VII expedition.

It is asserted that defendants breached that duty when, based on the information they had gathered in the 2010 expedition concerning the location of the Earhart aircraft, defendants acted unreasonably and outside of their duty of care in the manner in which they conducted NIKU VII.  Compl., ¶ 53.  It is specifically alleged that this negligence included, but was not limited to,

failing to utilize the information they had to conduct a reasonable search for the Earhart aircraft. *Id*. Finally, it is alleged that this breach caused plaintiff's damages. *Id*. at ¶ 54. In sum, a claim for negligence under Wyoming law is adequately asserted in the Complaint.

### III.
### The Economic Loss Rule is Inapplicable

The defendants also argue, albeit briefly, that the Complaint should be dismissed based on application of the so-called economic loss rule. While acknowledging that no written contract exists at all in this case, the defendants argue that a contract is not necessary to invoke the economic loss rule in Wyoming. *See* Memorandum in Support, pp. 19-20. The defendants, however, misinterpret Wyoming law, and the economic loss rule is wholly inapplicable in this case.

The economic loss rule is based on the principle that a claim for economic loss on contract cannot be translated into a tort action. In *Continental Ins. v. Page Eng'g Co.*, 783 P.2d 641 (Wyo. 1989), the Wyoming Supreme Court echoed the reasoning employed by numerous courts throughout the past century which have applied the rule.

> The recognized majority rule is that a claim for pure economic loss
> . . . does not lie on the theory of negligence or strict liability. . . . This rule is
> founded on solid policy justifications. . . . The authorities recognize that the law
> of contracts is far better suited to deal with the dissatisfaction on the part of [the
> contracting parties].

*Id*. at 647 (citations omitted).

In *Rissler & McMurry Co. v. Sheridan Area Water Supply Jt. Powers Bd.*, 929 P.2d 1228 (Wyo. 1996), the Wyoming Supreme Court applied the economic loss rule to bar negligence claims where no contractual privity actually existed between the immediate parties, but where the parties nevertheless had the opportunity to allocate the risks involved *in contracts with other parties*. In that case, the plaintiff Rissler & McMurry Company (Rissler), a general contractor,

- 10 -

entered into a contract with the Sheridan Area Water Supply Joint Powers Board (Board) for the construction of an improved water supply system.  In a separate contract, the board also contracted with HKM Associates (HKM) to act as project engineer during the construction project.  *Id*. at 1231.

Various problems ultimately occurred during the construction project, and Rissler filed suit against both the Board and HKM.  Rissler claimed that HKM was negligent in the formulation of the plans and specifications for the project, causing it damages.  It also claimed that HKM had made negligent misrepresentations which also caused it damages.  *Id*. at 1231-32.

In *Rissler*, the district court granted summary judgment in favor of HKM based upon the economic loss rule.  In affirming, the Wyoming Supreme Court stated:

> The "economic loss rule" bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property.  The purpose of the "economic loss rule" is to maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles.  As the court noted in *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,* 236 Va. 419, 374 S.E.2d 55, 58 (1988):
>
>> The controlling policy consideration underlying tort law is the safety of persons and property – the protection of persons and property from losses resulting from injury.  The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for.  If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other.
>
> The "economic loss rule" is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract."  *South Carolina Elec. & Gas Co. v. Westinghouse Elec. Corp.*, 826 F.Supp. 1549, 1557 (D.S.C. 1993).

*Rissler*, 929 P.2d at 1234-35 (footnote omitted).

The Wyoming Supreme Court went on to acknowledge that, while there was no contractual privity between Rissler and HKM, Rissler could have nevertheless allocated the risks involved in the construction project <u>in its contract with the Board</u>:

> In this case, Rissler did not contract with HKM for the design of the Project and therefore had no opportunity to negotiate directly with HKM regarding the limits of its liability.   <u>However, Rissler had the opportunity to allocate the risks associated with the costs of the work when it contracted with the Board and, in fact, entered into a detailed contract which allowed it the means, method and opportunity to recover economic losses allegedly caused by HKM's negligence.</u>

*Rissler*, 929 P.2d at 1235 (emphasis added).

In their Memorandum in Support, the defendants also cite the case of *Excel Construction, Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, 228 P.3d 40 (Wyo. 2010).  In that case, the Wyoming Supreme Court merely affirmed *Rissler's* holding that, notwithstanding the absence of contractual privity with the party asserting a tort claim, the economic loss rule will apply so long as the parties have the opportunity to allocate the risks involved in contracts with other parties. *See Excel Construction*, 228 P.3d at 45 ("The Court continues to believe that parties to a construction contract have the opportunity to allocate the economic risks associated with the work, and that they do not need the special protections of tort law to shield them from losses arising from risks, including negligence of a design professional, which are inherent in performance of the contract.")(*citing Rissler*, 929 P.2d at 1235).[4]

---

[4] The defendants also cite to the case of *D&D Transport, Ltd. v. Interline Energy Services, Inc.*, 2005 WY 86, 117 P.3d 423 (Wyo. 2005), for the proposition that the economic loss rule applies in the context of a third-party negligence claim.  The defendants' reliance is wholly misplaced. In *D&D Transport*, the Court did not dismiss the negligence claim based upon the economic loss rule, but rather on the basis that the element of duty was absent.  *See D&D Transport*, 117 P.3d at 429 ("We therefore conclude that no contractual or legal relationship existed which would support a duty to D&D in this instance.").

Here, and as the defendants appropriately acknowledge, no written contract is alleged to have existed between the plaintiff and the defendants.  More importantly, however, no written contract is alleged to have existed <u>with any other party</u>, whereby the plaintiff would have had the opportunity to allocate the risks associated with the defendants' negligence in conducting the NIKU VII expedition.  The economic loss rule as recognized by the courts in Wyoming is therefore inapplicable.[5]

## IV.
## Factual Arguments Regarding Implausibility

In its final argument for dismissal, Defendants argue that the claims made are "patently implausible".   In doing so, Defendants torture the standard for dismissal and convert it into something that is a creature unrecognizable in the light of Rule 8 and *Twombly*.

In its argument against plausibility, the Defendants present a host of unsupported and speculative facts and invite the court to weigh the allegations in the Complaint against their own narrative.   While unsupported facts may provide ample fodder for press releases and fund-raising letters, the Defendants fail to recognize the proper mode of analysis in a motion to dismiss.

For example, the Defendants present, as the facts of the case, that they couldn't have possibly misrepresented their knowledge regarding the Earhart Wreckage.  *Ashcroft* notes that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, **accepted as true**, to state a claim to relief that is plausible on its face."  *Ashcroft,* 556 U.S. at 678 (internal quotes and citations omitted) (emphasis added).  In addition, this Circuit has clearly articulated that "plausibility" at the dismissal stage "refers not to whether the allegations are likely to be

---

[5] The economic loss rule does not apply to intentional torts or torts which are premised on a duty independent of contractual duties.  *Excel Construction*, 228 P.3d at 46.

true;   the court must assume them to be true."   *Christy Sports,* 555 F.3d at 1191-1992. Defendants spend significant effort trying to convince this court that it cannot accept the allegations as true and must, instead, conclude that TIGHAR if virtuous and honest despite the allegations.   This approach is an invitation to error and should be rejected as such.

## V.
## Conclusion

Defendants invite this court to read only selective portions of the Complaint and to shield its face from the specific and material allegations that are contained throughout.   The law recognizes the frivolity of this approach and mandates a searching review of the Complaint in its entirety.   When all the allegations are taken as a whole, the case presented in the Complaint is both detailed and compelling.   For the foregoing reasons, and based on established law, the Court should appropriately deny the defendants' motion to dismiss.

DATED this 15th day of August, 2013.

<div style="margin-left: 40%;">

CROWLEY FLECK PLLP
Attorneys for Plaintiff

By:   /s/   Timothy Stubson
JEFF OVEN, Bar No. 6-3371
P. O. Box 2529
Billings, MT  59103-2529

TIMOTHY M. STUBSON, Bar No. 6-3144
152 North Durbin Street, Suite 220
Casper, WY 82601

Attorneys for Plaintiff

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served upon the following counsel of record, by the means designated below, this 15th day of August, 2013:

[  ]  U.S. Mail
[  ]  FedEx
[  ]  Hand-Delivery
[  ]  Facsimile
[  ]  Email                              *Counsel for Defendant(s)*
[X]  ECF Electronic filing

<div style="margin-left: 40%;">

/s/ Timothy M. Stubson
Jeffery J. Oven
Timothy M. Stubson

</div>