FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 SEP 25  PM 1 23

STEPHAN HARRIS, CLERK
CASPER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TIMOTHY MELLON, a Wyoming resident, ) ) ) | |
| Plaintiff, ) ) ) | Case No. 1:13-CV-00118-SWS |
| vs. ) ) | |
| THE INTERNATIONAL GROUP FOR ) HISTORIC AIRCRAFT RECOVERY, a ) Delaware non-profit corporation, and ) RICHARD E. GILLESPIE, ) ) | |
| Defendants. ) | |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COMPLAINT

This matter comes before the Court on Defendants' *Motion to Dismiss Complaint with Prejudice Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure* (ECF No. 16). The Court, having considered the briefs submitted in support of the motion and Plaintiff's opposition thereto, having heard oral argument of counsel, and being otherwise fully advised, FINDS and ORDERS as follows:

BACKGROUND

This action arises out of an expedition to investigate the disappearance of Amelia Earhart and search for the wreckage of the aircraft she was flying when she disappeared in 1937. In their brief, Defendants provide some interesting background facts relating to Ms. Earhart's attempted circumnavigation of the globe and ultimate disappearance, as well as the subsequent efforts of Defendant The International Group for Historic Aircraft Recovery ("TIGHAR") to locate her aircraft and solve the mystery of her disappearance. However, the Court must, for purposes of the present motion, consider only the allegations contained in Plaintiff's Complaint.

Defendant TIGHAR is a Delaware non-profit corporation that performs investigations, aviation archeology and historic preservation of rare and historic aircraft. (Compl. ¶ 2.) Defendant Richard Gillespie is TIGHAR's Executive Director. (*Id.* ¶ 3.) To help fund its efforts to investigate aircraft wreckage and accidents around the world, TIGHAR engages in fundraising through corporate sponsorships and private dollars. (*Id.* ¶¶ 9-10.) Among the most prominent of its activities is TIGHAR's ongoing investigation into the disappearance of Amelia Earhart and her navigator Fred Noonan in the South Pacific. (*Id.* ¶ 11.) Operating on the hypothesis that Earhart and Noonan landed and perished on the island of Nikumaroro in the Republic of Kiribati, TIGHAR has launched a number of expeditions to the island and conducted numerous detailed surveys and searches of the island and its surrounding waters. (*Id.* ¶ 13.)

In May 2010, TIGHAR embarked on an expedition to Nikumaroro Island known as NIKU VI, which involved use of a remote operated vehicle equipped with a High-Definition video camera. (*Id.* ¶¶ 14-15.) Central to his case, Plaintiff alleges significant footage of the waters surrounding the island was obtained during the NIKU VI expedition, including footage of the wreckage of the Lockheed Electra flown by Amelia Earhart when she disappeared. (*Id.* ¶ 15.) Plaintiff further alleges that, rather than disclose the discovery, TIGHAR began to plan and fundraise for its next expedition, NIKU VII. (*Id.* ¶ 16.) Defendant Gillespie began meeting with potential benefactors, including Plaintiff, to solicit contributions for funding NIKU VII. (*Id.* ¶¶ 17-18.)

Plaintiff alleges that on March 22, 2012, Gillespie spoke with him by telephone while he was at his home in Wyoming. (*Id.* ¶ 19.) During the conversation, the two discussed the next planned expedition and the possibility that Plaintiff might contribute to funding it. (*Id.*) Plaintiff asserts Gillespie followed up via fax and mail communicating to Plaintiff that the Earhart aircraft had not yet been located. (*Id.* ¶ 20.) The two allegedly had an additional conversation about Plaintiff supporting the NIKU VII expedition, during which Plaintiff noted a particular interest in being involved in the discovery of the Earhart wreckage. (*Id.* ¶ 21.) Plaintiff alleges Gillespie continued to represent that the wreckage had not been found and expressed optimism that a discovery was possible during the next expedition. (*Id.*) Allegedly based upon TIGHAR's

representations, Plaintiff contributed stock valued at $1,046,843.00 to help fund the NIKU VII expedition. (*Id.* ¶ 22.)

The NIKU VII expedition departed Hawaii on July 3, 2012, accompanied by Plaintiff as well as a documentary crew from the Discovery Channel and other supporters. (*Id.* ¶ 23.) TIGHAR has announced plans to fundraise for and launch yet another expedition in search of the aircraft, NIKU VIII. (*Id.* ¶ 25.) In this action, Plaintiff brings claims against Defendants for fraud, negligent misrepresentation, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and negligence.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides for dismissal when a plaintiff's complaint fails to state a claim upon which relief can be granted. In reviewing a motion to dismiss under Rule 12(b)(6), this Court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In order to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "plausibility standard" is not a probability requirement, but requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

-4-

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* Accordingly, complaints that "offer[] labels and conclusions[,] a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement," will not survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotations omitted).

In the Tenth Circuit, this "plausibility requirement" has been recognized as requiring the plaintiff's factual allegations to be enough that, if accepted as true, the plaintiff plausibly (not just speculatively) has a claim for relief. *See Gee v. Pacheco*, 627 F.3d 1178, 1183-84 (10th Cir. 2010). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

## DISCUSSION

Defendants contend Plaintiff has failed to make sufficient factual allegations as to each of his substantive claims in the Complaint. Instead, Defendants argue Plaintiff's Complaint consists entirely of "threadbare recitals of the elements of a cause of action" supported only by conclusory statements. *Ashcroft*, 556 U.S. at 678.

*Fraud*

"In order to prevail on a common law fraud allegation under Wyoming law, a plaintiff must prove (1) that the defendant made a false representation to induce action, (2) that the plaintiff relied upon the representation to his detriment, and (3) that the plaintiff reasonably believed the representation to be true." *Ravenswood Inv. Co., L.P. v. Bishop Capital Corp.*, 374 F.Supp.2d 1055, 1065 (D. Wyo. 2005) (citing *Halliburton Co. v. Claypoole*, 868 P.2d 252, 256 (Wyo. 1994)). Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to "state with particularity the circumstances constituting fraud []. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A complaint must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 522 (10th Cir. 2013) (internal quotations omitted).

Still, "[t]he requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be simple, concise, and direct . . . and to be construed as to do substantial justice." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (internal quotations omitted). Rule 8 requires a plaintiff to allege enough factual matter, taken as true, to state a plausible claim to relief. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). "This is not to say that the factual

allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged." *Id.*

Defendants argue Plaintiff's Complaint lacks the required specificity as to the alleged misrepresentations to Mellon regarding "the status of its exploration and investigation into the Earhart aircraft." (Compl. ¶ 27.) However, the Complaint alleges that in March 2012 (time), via telephone, fax and mail communications to Plaintiff while at his home in Wyoming (place), Defendant Gillespie (identity of party) falsely represented that the Earhart aircraft had not been located and that additional funding and efforts were needed to locate the aircraft (contents). (Compl. ¶¶ 18-21, 27.) The Complaint further alleges Plaintiff contributed over $1,000,000 in stock to help fund the NIKU VII expedition in reliance upon Gillespie's representations that the aircraft had not yet been discovered (consequences). (Compl. ¶¶ 22, 28-29.) The Court finds the Complaint satisfies the requirements of Rule 9(b) and contains sufficient factual content for this Court to reasonably infer Defendants made a false representation to induce Plaintiff to make a financial contribution, and Plaintiff reasonably believed and relied upon the representation to his detriment. Accordingly, Plaintiff has stated a plausible claim of fraud.

*Negligent Misrepresentation*

"Under Wyoming law, the elements of negligent misrepresentation are as follows: (1) defendant gave plaintiff false information in a transaction in which defendant had a

pecuniary interest; (2) defendant gave the false information to plaintiff for the guidance of plaintiff in plaintiff's business transactions; (3) defendant failed to use reasonable care in obtaining or communicating the information; (4) plaintiff justifiably relied on the false information supplied by defendant; and (5) as a result of plaintiff's reliance, plaintiff suffered economic damages." *Wyo. Sugar Growers, LCC v. Spreckels Sugar Co., Inc.*, 925 F.Supp.2d 1225, 1228 n.2 (D. Wyo. 2012) (citing *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 656 (Wyo. 2003)).

Defendants argue this claim fails because the Complaint lacks any allegation as to how they were negligent in viewing and analyzing the footage from NIKU VI. However, a complaint need not contain factual allegations detailing every circumstance giving rise to a claim. *See Twombly*, 550 U.S. at 1964 ("complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"). Plaintiff alleges that, prior to his financial contribution, "TIGHAR represented that its search for the Earhart aircraft was unsuccessful and that additional efforts were needed to discover the aircraft." (Compl. ¶ 33.) Plaintiff also alleges TIGHAR gave him this information in the course of soliciting a contribution from Plaintiff to help fund NIKU VII. (Comp. ¶¶ 21, 35.) Plaintiff further alleges that, at the time TIGHAR made the representations, they were false, as TIGHAR had filmed the wreckage of the aircraft during the course of its prior expedition in 2010. (Compl. ¶ 36.) Finally, Plaintiff alleges TIGHAR failed to exercise reasonable care and competence in review of the information obtained from NIKU VI

which demonstrated the representations to be false, and that Plaintiff justifiably relied on the representations in making a financial contribution to TIGHAR.  (Compl. ¶¶ 37-38.) The Court finds Plaintiff's factual allegations sufficient to state a plausible claim for negligent misrepresentation.

*RICO*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff bringing a civil RICO claim must allege the following four elements:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009).  A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).  "Those acts, commonly referred to as 'predicate acts,' must be violations of certain statutes. *See id.* § 1961(1)." *Hall*, 584 F.3d at 867.  Plaintiff, here, alleges "multiple acts of wire fraud and mail fraud" in the solicitation of contributions for its expeditions, in violation of federal statutes.  (Compl. ¶ 45.)  Plaintiff further alleges "TIGHAR made false representations to Mellon, to Andrew Sanger, to the Discovery Channel and others that the Earhart aircraft remained undiscovered . . . with the express purpose of soliciting contributions and sponsorships. These solicitations took place in a number of states, including Wyoming, and had a direct impact on interstate commerce."  (Compl. ¶ 46.)  TIGHAR allegedly "continues this pattern as it solicits ongoing donations for its planned expedition NIKU VIII." (Compl. ¶ 47.)

Rule 9(b)'s particularity requirement applies to RICO predicate acts based on fraud. *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989). "Rule 9(b) requires a plaintiff to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Internet Archive v. Shell*, 505 F.Supp.2d 755, 768 (D. Colo. 2007) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006)). A RICO plaintiff must also identify the purpose of the use of wires or mail within the defendant's fraudulent scheme. *Tal*, 453 F.3d at 1263. Although Plaintiff generally alleges TIGHAR "[u]tiliz[ed] the mails and national wire facilities" (Compl. ¶ 46), the Complaint lacks any specificity as to the time, place and consequences of the alleged false representations to these other parties. Plaintiff does not describe the mail or wire communications other than to allege they included "faxed transmittals and the transfer of documents." (Compl. ¶ 49.) The Complaint is further devoid of any specificity regarding the purpose of the use of wires and mail within the fraudulent scheme, simply alleging the purpose of soliciting contributions and sponsorships "for its expeditions." (Compl. ¶ 45.)

The Complaint also does not adequately allege a "pattern" of racketeering activity. The pattern element is not satisfied by simply showing relatedness between the predicate acts. *Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001). To satisfy this element, a plaintiff needs to allege "not only that the defendants had committed two or more predicate acts, but also that the predicates themselves amount to, or that they otherwise

constitute a threat of, *continuing* racketeering activity." *Hall*, 584 F.3d at 867. The Court

finds Plaintiff's one vague allegation that TIGHAR "continues this pattern as it solicits

ongoing donations for its planned expedition NIKU VIII" (Compl. ¶ 47) insufficient to

meet the heightened pleading requirements for a RICO claim. Thus, Plaintiff has failed

to state a plausible claim under RICO.

*Negligence*

As an alternative claim, Plaintiff alleges Defendants were negligent "in the manner

in which they conducted NIKU VII," including the failure "to utilize the information they

had to conduct a reasonable search for the Earhart aircraft." (Compl. ¶ 53.) Generally,

"[n]egligence occurs when one fails to act as would a reasonable person of ordinary

prudence under like circumstances." *Lucero v. Holbrook*, 288 P.3d 1228, 1232 (Wyo.

2012). Under Wyoming law, the elements of negligence are: "(1) The defendant owed

the plaintiff a duty to conform to a specified standard of care, (2) the defendant breached

the duty of care, (3) the defendant's breach of the duty of care proximately caused injury

to the plaintiff, and (4) the injury sustained by the plaintiff is compensable by money

damages." *Id.* "The existence and scope of a duty are questions of law for the court. . . .

A duty of care may arise by contract, statute, common law, or when the relationship of

the parties is such that the law imposes an obligation on the defendant to act reasonably

for the protection of the plaintiff." *Rice v. Collins Commc'n, Inc.*, 236 P.3d 1009, 1014

(Wyo. 2010) (internal quotations omitted).

Plaintiff alleges Defendants owed him a duty of reasonable care because of his interest in the NIKU VII expedition and the location of the Earhart aircraft. (Compl. ¶ 52.) However, Plaintiff has cited no authority to support a finding that the relationship between the parties here is such that the law imposes an obligation on Defendant, a non-profit organization undertaking efforts to find the Earhart wreckage, to act reasonably for the protection of Plaintiff, a donor to that cause. Thus, no contractual or legal relationship existed which would support a duty to Plaintiff in these circumstances. The Court finds, as a matter of law, Defendants did not owe Plaintiff a duty to conform to a specified standard of care in the manner they conducted NIKU VII. "Absent a duty, there is no actionable claim of negligence." *Rice*, 236 P.3d at 1014.

Even if the law supported such a duty, Plaintiff has failed to allege enough factual content for the Court to draw the reasonable inference that the Defendants breached the duty. The Court is left to speculate as to what was unreasonable about the manner in which Defendants conducted NIKU VII or what information Defendants failed to utilize. Accordingly, Plaintiff has failed to state a plausible claim for negligence.

*Economic Loss Rule*

Defendants contend the economic loss rule bars Plaintiff's tort claims. Generally, the economic loss rule "bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property." *Rissler & McMurry v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1234 (Wyo. 1996).

-12-

The purpose of the rule is to maintain the distinction between contract and tort claims. *Id.* 1234-35. "The 'economic loss rule' is founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract." *Id.* at 1235 (internal quotations omitted).

In *Excel Constr., Inc. v. HKM Eng'g, Inc.*, 228 P.3d 40 (Wyo. 2010), the Wyoming Supreme Court affirmed application of the economic loss rule to tort claims involving negligence or negligent misrepresentation. *Id.* at 46. Although contractual privity between the parties is not required for application of the rule, it serves to bar claims arising out of conduct involving the performance of *contractual* duties. *See id.* Here, there is no written contract between Plaintiff and Defendants, and no written contract is alleged to have existed with any other party, whereby Plaintiff would have had the opportunity to allocate the risks associated with the arrangement. Accordingly, the Court finds the economic loss rule is inapplicable to Plaintiff's claims.[1]

*Patent Implausibility*

Finally, Defendants argue Plaintiff's factual allegations "are so strained, so contrary to logical thinking and so contrary to the human condition as to warrant summary dismissal." (*Memo. in Support of Mot. to Dismiss Compl.* at 20) (ECF No. 14).

---

[1] The Wyoming Supreme Court has stated a claim for fraud is not necessarily barred by the economic loss rule. *Excel Constr.*, 228 P.3d at 47.

More specifically, Defendants contend it "defies all logic" that TIGHAR would conceal the historic discovery of the Earhart wreckage from the world, which would require a massive conspiracy plot involving the crews and owners of two vessels used in the NIKU VI expedition, a film crew from the Discovery Channel, and numerous others.

As stated above, however, the factual allegations themselves need not be plausible. *Bryson*, 534 F.3d at 1286. "The concept of 'plausibility' at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191-92 (10th Cir. 2009). "The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Id.* at 1192. Moreover, the Court may not dismiss a complaint on the basis that it appears unlikely the allegations can be proven. "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Robbins*, 519 F.3d at 1247 (internal quotations omitted). Even if remote and unlikely, Plaintiff's fraud and negligent misrepresentation claims satisfy the legal requirements to survive Defendants' Motion to Dismiss.

## CONCLUSION

For the reasons stated herein, the Court finds Plaintiff has stated a plausible claim for fraud and negligent misrepresentation, but has not stated plausible claims under RICO or for negligence. THEREFORE, it is hereby

ORDERED that Defendants' *Motion to Dismiss Complaint* (ECF No. 10) is

GRANTED as to Plaintiff's claims for RICO violations and negligence (Counts III and

IV), which are DISMISSED WITH PREJUDICE.  Defendants' motion is DENIED in all

other respects.

Dated this 25th day of September, 2013.

_____
Scott W. Skavdahl
United States District Judge