John A. Masterson #5-2386
Alaina M. Stedillie #6-4327
Lewis Roca Rothgerber, LLP
123 W. 1st Street, Suite 200
Casper, WY 82601
307-232-0222
307-232-0077 fax
jmasterson@lrrlaw.com.com
astedillie@lrrlaw.com

William J. Carter ISB#5295 *(Pro Hac Vice)*
Dean & Carter, PLLC.
1112 Main Street, #302
Boise, Idaho 83702
Phone: (208) 489-6004
Fax: (208) 246-6363
carter1@dean-carterlaw.com

Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TIMOTHY MELLON, a Wyoming resident, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE INTERNATIONAL GROUP FOR ) <br> HISTORIC AIRCRAFT RECOVERY, a ) <br> Delaware non-profit corporation and ) <br> RICHARD E. GILLESPIE, ) <br> ) <br> Defendants. ) | Case No. 13 CV 118-S |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'** ***MOTION FOR SUMMARY JUDGMENT*** **AS TO PLAINTIFF'S CLAIM OF NEGLIGENT MISREPRESENTATION**

**COME NOW** the Defendants, The International Group for Historic Aircraft Recovery ("TIGHAR") and Richard E. Gillespie ("Gillespie")[1] (collectively "Defendants"), by and through their attorneys, John A. Masterson and Alaina M. Stedillie of Lewis Roca Rothgerber LLP, and William J. Carter of Dean & Carter, PLLC, and respectfully submit this *Memorandum in Support of Defendants' Motion for Summary Judgment as to Plaintiff's Claim of Negligent Misrepresentation* in support of such *Motion*, filed concurrently herewith.

## I. Statement of Undisputed Material Facts and Statement of the Case

This action arises out of the 26 year effort of The International Group for Historic Aircraft Recovery ("TIGHAR") to investigate the disappearance of famed aviatrix Amelia Earhart and search for the wreckage of the aircraft she and her navigator, Fred Noonan, were flying when they disappeared over the South Pacific in 1937. Defendant TIGHAR is a Delaware non-profit corporation that, in part, performs investigations, aviation archeology and historic preservation of rare and historic aircraft. Compl. at ¶ 2. Defendant Richard Gillespie is, and always has been, TIGHAR's Executive Director. *Id.* at ¶ 3. To help fund its efforts to investigate aircraft wreckage and accidents around the world, TIGHAR engages in fundraising through corporate sponsorships and private efforts. *Id.* at ¶¶ 9-10. TIGHAR's ongoing investigation into the disappearance of Amelia Earhart and Fred Noonan in the South Pacific is one of TIGHAR's most prominent projects. *Id.* at ¶ 11. Operating on the basis of its developed hypothesis (which is consistent with historical records and recovered artifacts) that Earhart and Noonan landed and perished on the island of Nikumaroro in the Republic of Kiribati (pronounced "Keer-i-Bas"),

---

[1] It is unclear whether Gillespie is being sued as an individual or in his official capacity. For purposes of the issues presented by this Motion, this distinction is irrelevant, but out of an abundance of caution, Defendants intend Mr. Gillespie to be considered in both capacities. By doing so, they are not waiving the arguments made in their *Motion for Summary Judgment* as to claims against Mr. Gillespie as an individual defendant.

TIGHAR has launched a number of expeditions to the island and conducted numerous detailed surveys and searches of the island and its surrounding waters. *Id.* at ¶ 13.

In May 2010, TIGHAR embarked on its ninth expedition to Nikumaroro (referred to as "Niku VI"). This expedition included terrestrial archaeological exploration of the island, as well as underwater use of a remote operated vehicle equipped with a High-Definition video camera. *Id.* at ¶¶ 14-15. Niku VI did not produce any conclusive evidence in support of TIGHAR's hypothesis that Ms. Earhart landed and perished on Nikumaroro.[2]

On March 22, 2012, after reading of TIGHAR's upcoming 2012 expedition ("Niku VII"), Plaintiff emailed Mr. Gillespie and asked him to call him. A few days later, Mr. Gillespie did so, and, after a short discussion, Plaintiff offered to fund approximately half of the cost of the 2012 expedition, or around one million dollars; he completed the gift, which was unconditional, on March 30, 2012.[3] Gillespie Depo. at pp. 109-110.[4] Plaintiff did not undertake any independent investigation into TIGHAR or Mr. Gillespie prior to making his gift, nor did he solicit any additional information from TIGHAR before making his gift. Pl's Depo. at pp. 22, 107-108.[5] On July 3, 2012, the Niku VII expedition to find Earhart's aircraft embarked from Hawaii, accompanied by the Plaintiff. Compl. at ¶ 23. This expedition consisted again of underwater imaging and sonar. The 2012 expedition failed to find or recover definitive evidence to either support or challenge TIGHER's operating hypothesis.

On July 3, 2012, the Niku VII expedition to find Earhart's aircraft embarked from Hawaii, accompanied by the Plaintiff. Compl. at ¶ 23. The primary objective of this expedition

---

[2] Defendants' policy is not to announce the discovery of the airplane without indisputable, conclusive proof. Gillespie's Aff. at ¶ 8, attached hereto as Exhibit A.

[3] The actual gift to TIGHAR came in the form of stock with a value of $1,054,459.00.

[4] Mr. Gillespie's deposition is cited frequently throughout this Memorandum. All cited pages are attached hereto as Exhibit B.

[5] Plaintiff's deposition is cited frequently throughout this Memorandum. All cited pages are attached hereto as Exhibit C.

was to utilize a remote operated vehicle ("ROV") and an autonomous underwater vehicle ("AUV") to explore the underwater reef slope for aircraft wreckage adjacent to Nikumaroro. The Niku VII expedition did not produce any conclusive evidence to support (or challenge) TIGHAR's hypothesis.

While still on the 2012 expedition and immediately following it, Plaintiff began to review publicly-available underwater footage from the 2010 expedition. Pl's Depo. at pp. 30, 32-35. On December 8, 2010, over a year prior to Plaintiff's gift, this footage was loaded on TIGHAR's YouTube channel and was available for anyone to view. Gillespie Depo. at p. 200. Over the course of time and countless viewings, Plaintiff came to believe that this underwater footage showed many objects associated with the 1937 expedition of Ms. Earhart and Mr. Noonan. Pl's Depo. at pp. 41, 43, 78-79. These objects include, but are not limited to:

- Skeletal remains of Ms. Earhart;
- Skeletal remains of Fred Noonan;
- Cellophane bags wrapped around the skulls of Ms. Earhart and Mr. Noonan with tubes running to a bottle of nitrogen;[6]
- Shoes
- A banjo and case;
- A severed hand;
- Headset and wires;
- Plane landing gear;
- Wing sections;
- Camera and light meter;
- Toilet compartment and toilet paper rolls.

---

[6] Plaintiff believes Ms. Earhart and Mr. Noonan committed suicide in this fashion.

2004842852_1

*Id.*; *see also* Exhibit 11 to Pl's Depo. Collectively, these items and others will be referred to herein as "Earhart Wreckage."

As part of its efforts, TIGHAR operates a website,[7] one component of which is a "forum" where any person can post questions or answers or participate in electronic discussions regarding the disappearance of Ms. Earhart and Mr. Noonan. As one would expect, the topics and discussions vary widely in topic, substance and, sometimes, in tone. In the fall of 2012, Plaintiff began to post "screen captures" of images from the 2010 underwater footage, which he annotated to point out the objects of Earhart Wreckage he believed were depicted in the video. Pl's Depo. at pp. 18, 45. Also as one would expect, these posts drew a great deal of attention and sparked many comments and observations, both constructive and not. In fact, on two occasions Mr. Gillespie (as the administrator of the website) shut down discussions, as they were "taken over by trolls, it was just a mess." Gillespie Depo. at p. 129.[8]

Plaintiff has also identified two photographs as additional evidence that TIGHAR and Gillespie negligently misrepresented the Nikumaroro expeditions – the Cook photograph and the Bevington object.

The Cook photograph is an underwater photograph taken near Nikumaroro on September 13, 2009. Gillespie Aff. at ¶ 14. Plaintiff believes the Cook photograph depicts Earhart wreckage, specifically an engine or wheel, as well. Pl's Depo. at pp. 118-19. Plaintiff testified that, although he did not believe the photograph was "conclusive proof" that the Defendants had found the airplane, *id.* at pp. 115-116, he believes that the Defendants deliberately hid it from him as part of their alleged scheme to provide him with false information to ensure his gift. *Id.* at pp. 64, 70, 75, 81, 88, 116-19. However, this photograph was not taken by TIGHAR or during a

---

[7] www.tighar.org.
[8] Mr. Mellon testified that Gillespie's decision to shut down these discussions was one of the motivations for filing this Federal lawsuit. Pl's Depo. at p. 64.

TIGHAR expedition, was not evaluated by Plaintiff's team of experts, and was subject to a very strict non-disclosure agreement between TIGHAR and the owner of the rights to the image until *after* the 2012 expedition concluded. Gillespie Depo. at pp. 240, 287; Pl's Depo. at pp. 115, 117; Gillespie Aff. at ¶¶ 14-16. Even if TIGHAR or Mr. Gillespie had the photograph prior to Plaintiff's gift, they could not have released it to him based on the non-disclosure agreement. Gillespie Depo. at pp. 240, 287; Gillespie Aff. at ¶ 15. After conducting analysis of the Cook photograph, it is the Defendants' opinion that the photograph does not include anything of interest to the Earhart investigation; Plaintiff disagrees. Gillespie Aff. at ¶ 17.

The "Bevington object" is an object that appears in a 1937 photograph of Nikumaroro taken by an English serviceman who surveyed islands in the area. *Id.* at ¶ 11. The object was discovered in the photograph by Defendants, and Defendants made its existence known to the public by posting it to their website on April 20, 2010. *Id.* at ¶ 12. Analysis overseen by TIGHAR suggests that the object is consistent with landing gear from an Electra airplane; while its appearance is consistent with TIGHAR's theory about Ms. Earhart, the Defendants believe it is not conclusive evidence. *Id.* at ¶ 12; Gillespie Depo. at p. 194. This object was also not evaluated by Plaintiff's experts.

Over the course of time, Plaintiff apparently became convinced that the 2010 Niku VI underwater footage depicted Earhart Wreckage, that TIGHAR and Gillespie discovered Ms. Earhart's whereabouts and concealed that discovery from the world (in spite of Defendants' decision to place 2010 Niku VI underwater footage on YouTube in December 2010, the Discovery Channel's participation in expeditions and publicly airing television programs about TIGHAR and the expeditions, etc.) and that he was the victim of a massive fraud. Plaintiff apparently theorized that TIGHAR and Gillespie were raising money for expeditions through the use of deliberate lies (stating that artifacts had NOT been found), or that Defencants had been

negligent in investigating and evaluating the 2010 Niku VI underwater footage and thereby missed seeing the artifacts; Plaintiff concluded that but for Defendants' negligence, Plaintiff would not have made his gift. *See generally*, Compl. Under either scenario, Plaintiff claims to have been damaged to the tune of his million-dollar gift.

On June 3, 2013, Plaintiff filed suit against Defendants, bringing four causes of action: RICO, Fraud, Negligent Misrepresentation and Negligence. This Court dismissed the RICO and the Negligence allegations in response to Defendants' 12(b)(6) Motion, and this matter now present claims under the mutually exclusive theories of fraud and negligent misrepresentation.

Based on the authority and arguments set forth below, and the absence of factual support for Plaintiff's allegations, Defendants move this Court to grant summary judgment in their favor and dismiss the claim for negligent misrepresentation.

## II. Summary of the Argument

Plaintiff's negligent misrepresentation claim should be dismissed for the following simple and straightforward reasons: First, with discovery concluded,[9] Plaintiff has uncovered no evidence, other than his own speculation, of any misrepresentation made prior to his 2012 gift, negligent or otherwise, committed by anyone, let alone the Defendants. Plaintiff has provided no evidence that either TIGHAR or Mr. Gillespie lied about or misrepresented the facts arising from the 2010 expedition, which occurred prior to Plaintiff's gift. This failure has arisen because no negligent misrepresentation occurred, making summary judgment appropriate.

Second, the evaluation of materials from the 2010 expedition is a complex undertaking, involving a high degree of skill and expertise. To prove the "negligence" in "negligent

---

[9] By agreement of the Parties, one deposition remains to be taken even though the discovery cutoff deadline has passed. While it would be unexpected and surprising if that deposition changed any of the undisputed facts applicable to this *Motion*, any such development will, of course, be immediately brought to this Court's attention.

2004842852_1

misrepresentation," Plaintiff must establish a standard of care (e.g. What did Defendants do that they should not have done? What should Defendants have done instead?). Plaintiff has not produced, or attempted to produce, any expert testimony stating what the standard of care should be for such underwater exploration or archaeological analysis and identification. Third, Plaintiff must proactively prove a violation of this standard of care; he must prove an articulable, substantively supported theory of when, where, how, or why the Defendants were negligent. Again, Plaintiff has not produced any evidence or expert testimony to show the Defendants violated any standard of care, let alone one that might apply to this case.

### III. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e view all facts and evidence in the light most favorable to the party opposing summary judgment." *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012) (citing *Morris v. City of Colorado Springs*, 666 F.3d 654, 660 (10th Cir. 2012) ("In conducting the analysis, we 'view all facts [and evidence] in the light most favorable to the party opposing summary judgment.' ") (internal citations omitted)).

The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1197 (10th Cir. 2000).

> If the movant carries this initial burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts, identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein," from which a rational trier of fact could find for the nonmovant. *Id.* If the nonmovant fails to establish a genuine issue of material fact, then "we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion."

*Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1208–09 (10th Cir. 2000)).

The moving party may make a prima facie demonstration by pointing out to the Court a lack of evidence to support the nonmoving party's claims:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact" since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). Thus, the party moving for summary judgment need not negate the nonmoving party's claims in order to obtain summary judgment. Instead, the moving party only bears the initial burden of showing or pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. By pointing out the absence of any evidence of support the nonmoving party's claims, the burden shifts to the nonmoving party to "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmoving party." *Murphy v. Mid-Century Ins. Co.*, 2014 WL 2619073, *2 (D. Kan. 2014) (quoting *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)). "Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment." *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 834 (10th Cir. 1986).

## IV. No Evidence of Negligent Misrepresentation Exists

Under Wyoming law, the elements of negligent misrepresentation are as follows: (1) defendant gave plaintiff false information in a transaction in which defendant had a pecuniary interest; (2) defendant gave the false information to plaintiff for the guidance of plaintiff in plaintiff's business transactions; (3) defendant failed to use reasonable care in obtaining or communicating the information; (4) plaintiff justifiably relied on the false information supplied by defendant; and (5) as a result of plaintiff's reliance, plaintiff suffered economic damages." *Wyo. Sugar Growers, LCC v. Spreckels Sugar Co., Inc.*, 925 F.Supp.2d 1225, 1228 (D. Wyo. 2012) (citing *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 656 (Wyo. 2003)).

In order to prevail on his claim for negligent misrepresentation, the Plaintiff must provide evidence that the information given by the Defendants was *false*. Plaintiff must further establish what "reasonable care" means in this context and under these circumstances, as well as show that the Defendants failed to meet that standard. As to this matter, the Plaintiff alleges Defendants represented to him prior to his 2012 gift that Earhart and her plane had not been found and that the purpose of their expeditions was to do so. However, Plaintiff alleges that, in his opinion,[10] the Defendants had found Ms. Earhart, Mr. Noonan, and the plane in 2010 and either did not know it (when they should have) or knew it and negligently failed to communicate this information to Plaintiff. Therefore, for purposes of his negligent misrepresentation claim, Plaintiff must show first that Earhart had been found, second that Defendants knew or reasonably should have known this fact, and finally that Defendants consequently misrepresented this fact to Plaintiff prior to his gift. Plaintiff simply has provided no evidence to support any of these contentions.

---

[10] This opinion was based on his review of the 2010 footage after he gave his gift and after he returned from the 2012 expedition.

### a. Failure to Establish Standard of Care Prior to Gift

Nowhere, other than in his own deposition statements, does Plaintiff offer any evidence of what standard of care bound Defendants' actions prior to his gift. Additionally, the Plaintiff cannot provide any evidence that shows that Defendants provided him with false information at any time, let alone prior to the date he gifted the Defendants with stock to help fund the 2012 expedition. Indeed, Plaintiff states the following: that he contacted the Defendants via telephone and asked to make a gift, Pl's Depo. pp. 17, 21; that the Defendants sent him additional information materials despite the fact that he never asked for additional information prior to making his gift, *id.* at pp. 21, 25-26; and that he did not do additional research into TIGHAR or its activities prior to making his gift to Defendants, *id.* at pp. 18, 21-22.[11] Plaintiff never states how Defendants should have acted prior to his gift, how their actions violated his unarticulated standard of care, or how his own lack of diligence in researching the organization he planned to give over a million dollars to fulfills the elements of a claim for negligent misrepresentation.

Additionally, Plaintiff has designated no experts to discuss or testify regarding the standard of care applicable to Defendants while communicating information about the 2010 expedition, nor have any experts been identified to discuss or testify regarding whether Defendants provided false information to the Plaintiff prior to the date of his gift. Instead, the experts, who had the benefit of viewing video from both the 2010 and 2012 expeditions, can only state that shapes seen in the 2010 video are not inconsistent with pieces of the model of plane flown by Earhart.

By only providing his own conclusory allegations and opinions regarding the accuracy of information provided by Defendants, Plaintiff has failed to present creditable evidence sufficient

---

[11] *See also*, Pl's Answer to Interrog. No. 12; Pl's Resp. to Req. for Admission Nos. 6-10, 12, 31, 33, 36, and 43. All cited discovery answers are attached hereto as Exhibit D.

2004842852_1

to establish a controlling standard of care, which he is required to do to meet his burden of proof for this particular element of his claim for negligent misrepresentation. *Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1127 (10th Cir. 2009) (citing *Briggs v. Washington Metro. Area Transit Auth.*, 481 F.3d 839, 841 (D.C. Cir. 2007)).

### b. Designated Experts offer no opinion regarding standard of care and lack qualifications to do so

The Plaintiff has designated four separate experts to support his claim, namely: John D. Jarrell, Graham Forrester, Jay Vincelli, and Fatih Calakli. None of these experts, however, are qualified to testify regarding the appropriate standard of care applicable to the Defendants in this case.

In cases involving a specialized field, such as architecture or medicine, testimony about whether a defendant performed negligently must be provided by an expert in that particular specialized field. *Garman, Inc. v. Williams*, 912 P.2d 1121, 1123-24 (Wyo. 1996). The need for such expert testimony is necessary where "the common sense and experience of a layperson are sufficient to establish the standard of care." *Rino v. Mead*, 2002 WY 144, ¶ 17, 55 P.3d 13, 19 (Wyo. 2002) (quoting *Meyer v. Mulligan*, 889 P.2d 509, 516 (Wyo. 1995)). In the instant case, the standard of care for techniques used in filming, exploring, and analyzing underwater archaeological sites is clearly outside the ken of a layperson, making expert testimony necessary. Plaintiff even admits that specialized expertise in "undersea archaeological expeditions" is necessary. Pl's Depo. at pp. 59-60. None of the Plaintiff's experts, however, have any expertise in the field of underwater archaeology, claim none, and no presence of such expertise is noted in the Plaintiff's expert designation or any of the experts' reports. *See generally*, Expert Reports.

Perhaps recognizing their own lack of expertise in this particular field, none of the Plaintiff's designated experts opine about the standard of care that the Defendants should have

used when analyzing the 2010 expedition footage or communicating any information about the footage to the Plaintiff. Without that standard of care, Plaintiff cannot fulfill the elements of his claim for negligent misrepresentation. Plaintiff's experts also do not state that the footage contains what the Plaintiff claims it does. The Plaintiff's experts never state that the Earhart wreckage had been found prior to the 2012 expedition by the Defendants, nor do they make any mention of several of the items of wreckage Plaintiff claims are visible in the footage, most notably skeletal and human remains, musical instruments and cases, or a toilet and toilet paper.

### c. No evidence Defendants breached a duty of care

Messrs.' Jarrell and Forrester collaborated on a report entitled **Forensic Evaluation of Video Footage from the TIGHAR 2010 and 2012 Nikumaroro** and concluded that "The objects we have identified in the 2010 video footage are *consistent* with parts of the Earhart Lockheed Electra Model 10, and, in the absence of an alternative explanation for the source of those objects, we concluded that they are *likely* to have originated from Earhart's Electra." (emphasis added) Jarrell also submitted a **Supplemental Report** which contains conclusions that are not materially different than the ones contained in the original report.

Mr. Vincelli submitted a report entitled **3D Modeling of Lockheed Electra Model 10E and Analysis of Video Footage from the TIGHAR 2010 Nikumaroro Expedition**. In addition to being nearly identical to the report compiled by Jarrell and Forrester, the report by Vincelli suffers from the same defects. His conclusion Number 9 states "The objects we have identified in the 2010 video footage are *consistent* with parts of the Earhart Lockheed Electra Model 10, and, in the absence of an alternative explanation for the source of those objects, we concluded that they are *likely* to have originated from Earhart's Electra." (emphasis added) This language is a verbatim recitation of the same conclusion that Jarrell and Forester reached. Vincelli also qualifies each and every conclusion in his report with same verbiage used by Jarrell

and Forrester when they hedge away from providing an ultimate conclusion that would provide any sort of expert guidance to a jury in this case. These issues create a serious obstacle for the Plaintiff to surmount when meeting his burden of proof.

First, nowhere in the reports do the experts definitively state that the objects which they contend they observe in photographs and video are from Earhart's airplane, let alone any other aircraft. The conclusions in their reports are continuously qualified with phrases such as "consistent with" or "inconsistent with" or "are likely." For example, in conclusion Number 3, instead of simply stating that the pictures depict a front landing wheel, the report states "There is a collection of objects atypical of naturally occurring formations in some details of shape and coloration, *but consistent with* the front landing wheel…." (emphasis added).

Further, and even more importantly, the reports are completely devoid of any conclusion that the Defendants' failure to identify these objects from the 2010 expedition as parts of Earhart's aircraft was negligent. Not only must the Plaintiff establish the falsity of the information Defendants provided to him, which neither he nor his experts can do, he must establish that the Defendants failed to use reasonable care "in obtaining or communicating information." There is simply nothing in the reports that establishes what constitutes reasonable care in these circumstances or that establishes that the Defendants failed to utilize reasonable care in communicating information to the Plaintiff.

Additionally, assuming that Plaintiff's experts are correct that images in the 2010 footage are "consistent with" various parts of the model of plane flown by Earhart, these reports do not show Defendants were negligent in how they conducted their 2010 expedition or how they communicated information about it to the Plaintiff. Defendants analyzed the videos both on the days they were taken and after the expedition returned, Gillespie Depo at pp. 160-61, 164, 167-69, 175-76, 185-86; they posted them publicly for anyone and everyone to review, *id.* at p. 200;

they planned to return to the island for further research, *id.* at p. 232; and in 2012 they again searched part of the area filmed in 2010, *id.* at pp. 257-58, 261-62, 264-65. Plaintiff's experts do not criticize any of the actions, or inactions for that matter, made by Defendants during their 2010 expedition or in Defendants' analysis of the footage performed after the expedition concluded. They do not opine as to whether the Defendants met a standard of reasonable care. Without establishing that standard, let alone providing any evidence of its breach, Plaintiff's claim for negligent misrepresentation must fail.

Much like his experts, Plaintiff himself cannot provide a standard of reasonable care which he would have liked the Defendants to meet. In his deposition, when asked what he felt the Defendants should have done with the 2010 footage so as not to be negligent, he states that they should have used a "different" expert, as he believes "they had the wrong expert, yes, certainly." Pl's Depo. pp. 75. He goes on to state that "If [the Defendants] actually didn't know, then they should have hired sufficient expertise to determine that the airplane was there." *Id.* at 77. The Plaintiff never states what kind of expert the Defendants should have hired, what constitutes "sufficient expertise," what analysis should have been done, how it should have been carried out, when it should have been done -- in short, the Plaintiff fails to establish a reasonable care standard with which the Defendants should have complied or how they breached it. Indeed, he cannot establish such a standard or a breach thereof because, as he readily admits, while specialized expertise is necessary, he is not an expert in analyzing underwater footage or performing archaeological recovery. *Id.* at 59-60, 79-80, 92.

He then states that, in order to avoid a claim of negligent misrepresentation, the Defendants should have announced they found the aircraft after the 2010 expedition. *Id.* at pp. 77-78. The Plaintiff's opinion that the Defendants should have announced they discovered Earhart's plane is a bold one, since his own experts can only state that certain shapes in the coral

2004842852_1

and rock surrounding the island are "consistent with" elements of an Electra airplane. Given the Plaintiff's vague statements about how the Defendants should have acted, along with his admitted lack of expertise and the non-specific conclusions of his own experts, the Plaintiff's opinions about whether or not the Defendants negligently misrepresented the status of the Niku expeditions are merely that: opinions without any support, whether from a legal, scientific, or even reasonable person standard.

Plaintiff does try to rely on his allegations that Defendants failed to disclose two key pieces of evidence from him prior to his gift – the "Cook photograph" and the "Bevington object." As stated above, TIGHAR had not received the Cook photograph at the time Plaintiff made his gift; even if the Defendants had possessed the photograph prior to Plaintiff's gift, they could not have discussed it with them due to the non-disclosure agreement with the party who owned the rights to the photograph. Gillespie Depo. at pp. 240; 287; Gillespie Aff. at ¶¶ 15-16. Defendant has not offered any evidence to show that Defendants had the photograph in their possession or that they could have discussed it with him prior to his gift. Therefore, just how Defendants negligently misrepresented information allegedly found in the Cook photograph is never fully explained by Plaintiff; again, he only relies upon his own opinion to support this allegation.

As for the Bevington object, Plaintiff again provides no explanation for how the Defendants negligently misrepresented the Earhart expeditions by not explicitly mentioning it to him before he made his gift. The Bevington object was available to the public *almost two years prior* to Plaintiff's decision to contact the Defendants and make a gift to TIGHAR. Gillespie Aff. at ¶ 12. Plaintiff has admitted to viewing TIGHAR's website prior to making his gift. Given these circumstances, Plaintiff cannot and has not provided evidence to prove that by not telling

him about the Bevington object, the Defendants negligently misrepresented TIGHAR's mission or the status of the search for the Electra airplane.

Finally, the key time frame for determining the claim of negligent misrepresentation is what the Defendants knew or should have known *prior* to the Plaintiff's gift on March 30, 2012. This means that the video footage from summer 2012 is irrelevant to resolution of this claim. Despite this fact, both reports contain the same statement under **Methods**: "Our team's methodology began with a frame by frame review of the underwater videos of the proposed crash site provided by TIGHAR, dated 2010 and also reviewed 2012 footage." Thus, every conclusion in the Plaintiff's expert reports has the benefit of reviewing the 2012 video footage, which did not exist at the time pertinent to Plaintiff's claims, i.e. prior to his gift. Therefore, these reports fail to establish to any extent what the Defendants knew or should have known based upon the 2010 expedition findings and footage.

In short, the Plaintiff has no evidence which, even when granting every inference in favor of his case, can prove the elements necessary to establish negligent misrepresentation. The expert reports fail to prove that any representation by the Defendants that Earhart's aircraft had not been found is false. At best, the Plaintiff's designated experts opine, with the benefit of the 2012 footage, that objects seen in the ocean in the 2010 footage are "consistent" with airplane parts. Further, the Plaintiff has no evidence that the Defendants negligently misrepresented any information regarding their search for Amelia Earhart. Plaintiff's experts have no evidence, and cannot provide any, establishing the appropriate level of care for archaeological recovery or statements about the search or that Defendants have breached that duty of care, and they have not even attempted to introduce such evidence.

17 of 19

2004842852_1

## V. Conclusion

The Plaintiff cannot prevail on his remaining claim of negligent misrepresentation. Having admitted that he is not an expert in reviewing or analyzing underwater video footage or in archaeological recovery and that such expertise is necessary to properly evaluate the footage, the Plaintiff can only provide a vague standard of using a "different expert" as the basis for his negligent misrepresentation claim. The Plaintiff is therefore forced to rely upon expert reports in attempt to prove the necessary elements of his claims. However, the plain language of the reports shows that in no circumstance do the expert reports establish, even when giving every inference to the Plaintiff, a standard of reasonable care or necessary proof that Defendants breached it. Simply put, the Plaintiff cannot establish the appropriate standard of care, a violation of it, or the necessary elements of a claim negligent misrepresentation. Summary judgment is appropriate in this matter and should be entered in favor of the Defendants on the claim of negligent misrepresentation.

DATED this 19th day of June, 2014.

THE INTERNATIONAL GROUP FOR HISTORIC AIRCRAFT RECOVERY and RICHARD E. GILLESPIE

By   /s/ Alaina M. Stedillie
John A. Masterson  #5-2386
Alaina M. Stedillie  #6-4327
Lewis Roca Rothgerber LLP
123 W. 1st Street, Suite 200
Casper, WY  82601
307-232-0222
307-232-0077 fax
jmasterson@lrrlaw.com
astedillie@lrrlaw.com

2004842852_1

>William J. Carter ISB#5295 *(Pro Hac Vice)*
>Dean & Carter, PLLC.
>1112 Main Street, #302
>Boise, Idaho 83702
>Phone: (208) 489-6004
>Fax: (208) 246-6363
>carter1@dean-carterlaw.com
>
>Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of June, 2014, a true and correct copy of the foregoing was electronically served upon all parties registered as CM/ECF users in this case via the Court's CM/ECF electronic mail service including the following:

| | |
|---|---|
| Jeff Oven | Timothy Stubson |
| Crowley Fleck PLLP | Crowley Fleck PLLP |
| P.O. Box 2529 | 152 N. Durbin, suite 220 |
| Billings MT 59103-2529 | Casper, WY 82601 |
| joven@crowleyfleck.com | tstubson@crowleyfleck.com |

>_____/s/_____
>Lewis Roca Rothgerber LLP