John A. Masterson #5-2386
Alaina M. Stedillie #6-4327
Lewis Roca Rothgerber LLP
123 W. 1st Street, Suite 200
Casper, WY  82601
307-232-0222
307-232-0077 fax
jmasterson@lrrlaw.com.com
astedillie@lrrlaw.com

William J. Carter ISB#5295 *(Pro Hac Vice)*
Dean & Carter, PLLC.
1112 Main Street, #302
Boise, Idaho 83702
Phone: (208) 489-6004
Fax: (208) 246-6363
carter1@dean-carterlaw.com

Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| TIMOTHY MELLON, a Wyoming resident, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13 CV 118-S |
| | ) | |
| THE INTERNATIONAL GROUP FOR | ) | |
| HISTORIC AIRCRAFT RECOVERY, a | ) | |
| Delaware non-profit corporation and | ) | |
| RICHARD E. GILLESPIE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' *MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM OF FRAUD*

**COME NOW** the Defendants, The International Group for Historic Aircraft Recovery ("TIGHAR") and Richard E. Gillespie ("Gillespie")[1] (collectively "Defendants"), by and through their attorneys, John A. Masterson and Alaina M. Stedillie of Lewis Roca Rothgerber LLP, and William J. Carter of Dean & Carter, PLLC, and respectfully submit this *Memorandum in Support of Defendants' Motion for Summary Judgment as to Plaintiff's Claim of Fraud* in support of said Motion, filed concurrently herewith.

## I.  Statement of Case and Undisputed Material Facts

This action arises out of the 26 year effort of The International Group for Historic Aircraft Recovery ("TIGHAR") to investigate the disappearance of famed aviatrix Amelia Earhart and search for the wreckage of the aircraft she and her navigator, Fred Noonan, were flying when they disappeared over the South Pacific in 1937.  Defendant TIGHAR is a Delaware non-profit corporation that, in part, performs investigations, aviation archeology and historic preservation of rare and historic aircraft.  Compl. at ¶ 2.  Defendant Richard Gillespie is, and always has been, TIGHAR's Executive Director.  *Id.* at ¶ 3.  To help fund its efforts to investigate aircraft wreckage and accidents around the world, TIGHAR engages in fundraising through corporate sponsorships and private efforts.  *Id.* at ¶¶ 9-10.  TIGHAR's ongoing investigation into the disappearance of Amelia Earhart and Fred Noonan in the South Pacific ("The Earhart Project") is one of TIGHAR's most prominent efforts, *id.* at ¶ 11.  Operating on the basis of its developed hypothesis (which is consistent with historical records and recovered artifacts) that Earhart and Noonan landed and perished on the island of Nikumaroro in the Republic of Kiribati (pronounced "Keer-i-Bas"), TIGHAR has launched a number of expeditions

---

[1]  It is unclear whether Gillespie is being sued as an individual or in his official capacity.  For purposes of the issues presented by this Motion, this distinction is irrelevant, but out of an abundance of caution, Defendants intend Mr. Gillespie to be considered in both capacities.

to the island and conducted numerous detailed surveys and searches of the island and its surrounding waters. *Id.* at ¶ 13.

In May 2010, TIGHAR embarked on its ninth expedition to Nikumaroro (referred to as "Niku VI"). This expedition included terrestrial archeological exploration of the island, as well as underwater use of a remote operated vehicle equipped with a High-Definition video camera. *Id.* at ¶¶ 14-15. Niku VI did not produce any conclusive evidence in support of TIGHAR's hypothesis that Ms. Earhart landed and perished on Nikumaroro.[2]

On or about March 22, 2012, after reading of TIGHAR's upcoming 2012 expedition ("Niku VII"), Plaintiff e-mailed Gillespie, seeking a phone call to discuss possible funding for the expedition. Gillespie Depo. at p. 243[3] and Gillespie Depo. Exhibit 44.[4] After a short follow-up telephone call, on March 24, 2014, Plaintiff offered to fund approximately half of the cost of Niku VII. Eight days later, on March 30, 2012, Plaintiff made a tax deductible donation of stock to TIGHAR valued at $1,054,459.00. The gift was unconditional - Plaintiff's Requests for Admission state:[5]

42.    Admit You made Your Donation to TIGHAR with no conditions other than the expectation that You would accompany the 2012 expedition.

**RESPONSE:**  Denied.  Plaintiff did not condition his gift upon accompanying the 2012 expedition.

43.    Admit You had no contract with TIGHAR regarding Your Donation.

**RESPONSE:** Admit.

---

[2] Defendants' policy is to not announce a conclusive discovery without conclusive proof.  See *Affidavit of Richard E. Gillespie*, attached hereto as Exhibit A and incorporated herein by this reference.
[3] Full pages of Gillespie's deposition containing excerpts used herein are attached hereto as Exhibit B and incorporated herein by this reference.
[4] All Gillespie deposition exhibits are attached hereto as Exhibit C and incorporated herein by this reference.
[5] Full pages of the cited Requests for Admission completed by Plaintiff are attached hereto as Exhibit D and incorporated herein by this reference.

45.    Admit You had no written agreement with TIGHAR regarding Your Donation.

**RESPONSE:** Admit.

Plaintiff did not undertake any independent investigation into TIGHAR or Mr. Gillespie prior to making his gift, nor did he solicit any additional information from TIGHAR about The Earhart Project or the investigation before making it, though Mr. Gillespie nonetheless sent him, unsolicited, some basic materials:

Q.  Okay.  My question is, did you ask for materials from TIGHAR or did Mr. Gillespie just send them to you?

A.  I think he just sent them to me.

Q.  Okay.

A.  But I may have asked for other materials, I don't remember.

Pl's Depo. at p. 114.[6]

See also Plaintiff's Requests for Admission:

10.    Admit that before You made Your Donation, You did not ask to see any videotape or other recordings made recorded during the NIKU VI expedition.

**RESPONSE:** Admit.

11.    Admit that before You made Your Donation, You did not ask to see any Documentation or other materials from TIGHAR.

**RESPONSE:** Denied.  Before making the donation TIGHAR provided a DVD of a Discovery Channel show, a DVD titled "An Aerial Tour of Nikumaroro", a copy of Ric Gillespie's book and a collector's folio of the "The Harney Drawings" of Earhart's Electra.

33.    Admit You never asked Mr. Gillespie any specific questions about the findings from the NIKU VI expedition.

**RESPONSE:** Admit.

---

[6]  Full pages of Plaintiff's deposition containing excerpts used herein are attached hereto as Exhibit E and incorporated herein by this reference.

On July 3, 2012, the Niku VII expedition to find Earhart's aircraft embarked from Hawaii, accompanied by the Plaintiff.  Compl. at ¶ 23.  The primary objective of this expedition was to utilize a remote operated vehicle ("ROV") and an autonomous underwater vehicle ("AUV") to explore the underwater reef slope for aircraft wreckage adjacent to Nikumaroro Island.  The Niku VII expedition did not produce any conclusive evidence to support (or challenge) TIGHAR's hypothesis.

Following the 2012 expedition, Plaintiff began to review publicly-available underwater footage from the 2010 expedition.  This footage had been loaded on TIGHAR's YouTube channel on or about December 8, 2010, well before Mr. Mellon's gift, for anyone to view.  Over the course of time and countless viewings, Plaintiff came to believe that the 2010 underwater footage showed many objects associated with the 1937 expedition of Ms. Earhart and Mr. Noonan.  These objects include, but are not limited to:[7]

- Skeletal remains of Ms. Earhart;

- Skeletal remains of Fred Noonan;

- Cellophane bags wrapped around the skulls of Ms. Earhart and Mr. Noonan with tubes running to a bottle of nitrogen;[8]

- Shoes;

- A banjo and case;

- A severed hand;

- Headset and wires;

- Plane landing gear;

---

[7]  See Pl's Depo. Exhibit 11.  Copies of all Plaintiff's deposition exhibits referenced in this Memorandum are attached as Exhibit F and incorporated herein by this reference.

[8]  Plaintiff believes Ms. Earhart and Mr. Noonan committed suicide in this fashion.  See Pl's Depo. Exhibit 12, found in the attached Exhibit F.

- Wing sections;

- Camera and light meter;

- Toilet compartment and toilet paper rolls;

For ease of reference, these items and any other materials which may be associated with the 1937 expedition will be referred to herein as "Earhart Wreckage."

As part of its efforts, TIGHAR operates a website,[9] one component of which is a "forum" where any person can post questions or answers, review postings and announcements, or participate in electronic discussions regarding the disappearance of Ms. Earhart and Mr. Noonan. As is universally the case with such online forums, the topics and discussions vary widely in topic, substance and, sometimes, in tone.  In the fall of 2012, Plaintiff began to post "screen captures" of images from the 2010 underwater footage, which he annotated to point out the objects of Earhart Wreckage he believe were depicted in the video.  Also as one would expect, these posts drew a great deal of attention and sparked many comments and observations, both constructive and not.  In fact, on two occasions Mr. Gillespie (as the administrator of the website) shut down discussions, as they had become somewhat less than civil, or as described by Mr. Gillespie, "taken over by trolls, it was just a mess."  Gillespie Depo. at p. 129, see also Pl's Depo. Exhibits 8 and 9, found in the attached Exhibit F.

Having convinced himself that the 2010 Niku VI underwater footage depicted Earhart Wreckage, that TIGHAR and Gillespie had discovered Ms. Earhart's whereabouts, that they had somehow concealed that discovery from the world (in spite of placing the 2010 Niku VI underwater footage on YouTube in December 2010, the Discovery Channel's participation in expeditions and publicly airing television programs about TIGHAR and the expeditions, etc.) and having had his "forums" shut down and his opinions criticized, Plaintiff apparently decided

---

[9] www.tighar.org.

that he was the victim of a massive fraud.  Plaintiff apparently theorized that Defendants were doing one of two things: either raising money for expeditions through purposeful lies (stating that artifacts had NOT been found), or that Defendants had been negligent in investigating and evaluating the 2010 Niku VI underwater footage and thereby missed seeing the artifacts, and that but for TIGHAR's negligence, Plaintiff would not have donated to TIGHAR.

On June 3, 2013, Plaintiff filed suit against Defendants, bringing four causes of action: RICO, Fraud, Negligent Misrepresentation and Negligence.  This Court dismissed the RICO and the Negligence allegations in response to Defendants' 12(b)(6) Motion, and this matter now presents claims under the mutually exclusive theories of fraud and negligent misrepresentation. At this time, with the exception of two depositions the parties were unable to schedule and have agreed to take after discovery is closed, discovery is complete.[10]

Based upon the authority and arguments set forth below, and the absence of factual support for Plaintiff's allegations, Defendants move this Court to grant summary judgment in their favor and dismiss the fraud allegations.

## II.  Summary of the Argument

Fraud is an allegation of such a serious nature and consequences as to warrant a heightened standard of pleading (See F.R.C.P. 9(a)(2)(b)) as well as a heightened standard of proof: clear and convincing evidence as opposed to a preponderance of evidence.  *Universal Drilling Company, LLC v. R & R Rig Service, LLC*, 2012 WY 31, ¶ 21, 271 P.3d 987, 994-995 (Wyo. 2012), citing *Excel Construction, Inc. v. HKM Engineering, Inc.*, 2010 WY 34, ¶ 33, 228 P.3d 40, 48-49 (Wyo. 2010).

---

[10]  Defendants do not believe these remaining depositions will impact this motion, or any dispositive motion, but should they, Defendants reserve the right to supplement them if necessary.

In this matter, Plaintiff's fraud allegations fail as they are utterly lacking in proof. Despite months of formal discovery, including Requests for Admission, Interrogatories and Requests for Production of Documents, as well as depositions of the parties, experts and TIGHAR Board members, Plaintiff has failed to produce a scintilla of evidence, let alone "clear, unequivocal and convincing evidence," to substantiate his opinion that he has been the victim of any fraud.  While in the absence of proof any claim will fail, here the decision is even clearer given the heightened burden of proof.

### III.    Argument - Absence of Evidence

The Plaintiff has alleged fraud against the Defendants, charging that they knowingly and intentionally misrepresented the status of the Earhart exploration and investigation. The elements of fraud in Wyoming have long been recognized:

> Fraud is established when a plaintiff demonstrates, by clear and convincing evidence that, (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages."

*Phillips v. Toner*, 2006 WY 59, ¶ 22, 133 P.3d 987, 996 (Wyo. 2006), citing *Bilter v. First National Bank in Evanston*, 2004 WY 114, ¶ 12, 98 P.3d 853, 856 (Wyo. 2004).

Fraud must "be established by clear, unequivocal, and convincing evidence, and it will never be presumed."  *McKenney v. Pacific First Federal Savings Bank of Tacoma, Washington*, 887 P.2d 927, 929 (Wyo. 1994).  "Clear, unequivocal and convincing evidence" has been defined as the "kind of proof which would persuade a trier of fact that the truth of the contention is highly probable."  *MacGuire v. Harriscope Broadcasting Co.*, 612 P.2d 830, 839 (Wyo. 1980).  The Wyoming Supreme Court has also added a more objective description of the clear and convincing evidence standard:

> The witness to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the

transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue.

*Meyer v. Norman*, 780 P.2d 283, 291 (Wyo. 1989); *citing Weigand v. Union Nat'l Bank of Wichita*, 227 Kan. 747, 610 P.2d 572, 577 (Kan. 1980).

Knowledge that the statement being made is fraudulent is also required.  The Wyoming Supreme Court "has expressly held that one cannot be guilty of fraudulently or intentionally concealing or misrepresenting facts of which he is not aware." *Throckmartin v. Century 21 Top Realty*, 2010 WY 23, ¶ 23, 226 P.3d 793, 809-10 (2010).

The heightened burden of proof also applies in the context of considering a motion for summary judgment:

When a party accused of fraud has presented facts, in support of a motion for summary judgment, that refute the allegations of fraud, "the party relying upon the fraud claims then must demonstrate the existence of genuine issues of material fact by clear, unequivocal and convincing evidence."

*Phillips*, 133 P.3d at 996, ¶ 24.

The fraud claims of the Plaintiff initially fail for many of the same reasons that his claim for negligent misrepresentation fails: Lack of Proof.  The Plaintiff has not produced any evidence to support what he wants to believe, for the simple reason that none exists.  The Plaintiff has theories and opinions but they are without the most rudimentary support or corroboration.  There are no witnesses, no documents, no e-mails, no texts or any evidence to either establish or confirm Plaintiff's opinion that he was deliberately lied to by Defendants.

In his deposition, when asked what evidence he had of fraud, the following discussion took place:

Q.  Is that a correct statement?  Your theory is that they lied about what's in the 2010 video, correct?

A.  That they failed to disclose that the aircraft was shown in the 2010 video, yes.

Q.  And when did you decide that was the case?

A.  I would say at the end of January 2013.

Pl's Depo. at pp. 80 – 81, found in the attached Exhibit E.

Q.  Okay.  And what evidence do you have that TIGHAR knew that footage showed airplane parts?

A.  Well, the video speaks for itself.  The rope is there by their own admission, the wire is there by their own admission.

Q.  Okay.  My question is what – what evidence do you have?  So you've told me the video.  What else?

A.  The Cook photo.[11]

Q.  All right, what else?

A.  That's enough.

Q.  But there's nothing else that you have?

A.  No.

Q.  You don't have letters or emails where they admit that they see it in that 2010 video.

A.  I haven't seen all the letters and emails, so I don't know.

Q.  You don't have anything now, correct?

A.  Huh?

Q.  You don't have anything now?

A.  I don't.  The discovery might have something, I haven't reviewed all that.

Q.  And no one else has told you that they knew it was there and they lied?

---

[11]  The "Cook photo" or "Cook photograph" is explained in the "*Affidavit of Richard E. Gillespie,*" attached hereto as Exhibit A and incorporated herein by this reference.

A.  No.

Pl's Depo. at pp. 81 – 82, found in the attached Exhibit E.

Q.  Do you have any evidence of communication between Mr. Gillespie and anyone with TIGHAR about the – that the aircraft was found and they hid it?

A.  Not specifically, no.

Q.  Okay, how about generally?

A.  Well, I did allude to various posts that he made discouraging people from looking any further, so that was to TIGHAR people.

Q.  That's nothing direct that indicates he was lying, is it?

A.  I don't understand your question.

Q.  You don't have anything that shows – I'll try again.  You don't have anything that directly shows Mr. Gillespie lied to you.

A.  Yes, the TIGHAR – the content of the 2010 video.

Q.  And the Cook photograph.

A.  And the Cook photograph.

Q.  Anything else?

A.  No.

Q:  How about TIGHAR, anything else other than the 2010 footage and the Cook photograph?

A:  As we discussed about the Bevington object.[12]

Pl's Depo. at pp. 87 – 88, found in the attached Exhibit E.

---

[12]  The "Bevington object" is also explained in the *Affidavit of Richard E. Gillespie*, attached hereto as Exhibit A and incorporated herein by this reference.

Q.  Well, I've been asking you what evidence you have that TIGHAR and Mr. Gillespie

lied to you.  And you gave me the 2010 footage, you gave me the Cook photo, and that

was it for a while.  Now you've brought up the Bevington object.

A.  No, we already talked about the Bevington object.

Q.  Okay.

A.  Go back and look at the transcript.

Q.  Okay.  And you believe that's direct evidence that they lied to you.

A.  I believe it shows the deceit and effort to raise funds for the expedition, yes.

Q.  And it's an intentional lie.

  MR. STUBSON:  Objection, asked and answered.

A.  I don't think the evidence as presented is strong enough to imply that it's – that object

in the photo is part of the aircraft.

BY MR. MASTERSON:

Q.  To you that's part of the fraud?

A.  Yes.

Pl's Depo. at pp. 89 – 90, found in the attached Exhibit E.

Q.  Question 14:  Admit that you have no conclusive, physical proof that actual Earhart

artifacts are underwater near Nikumaroro.  And your response was denied, you have film

of underwater artifacts.  Is there anything else you have other than the film?

A.  The picture from Mr. Cook.  That would be it.

*   *   *

Q.  And do you consider that photographic evidence to be conclusive?

A.  I don't know.  It hasn't – it hasn't been evaluated carefully by anyone I know, except

Mr. Glickman did evaluate it.

Pl's Depo. at pp. 114 – 115, found in the attached Exhibit E.

These exchanges demonstrate that Plaintiff's fraud theory is based upon his *opinion* that photographs show Earhart Wreckage, apparently believing that the proof is self-evident in the photographs. But despite repeated questions and repeated opportunities to explain what evidence he has, Plaintiff does not even attempt to fulfill that obligation. What is distinctly lacking is anything more than his opinion of what the referenced images depict.

In his answers to written discovery, which have not been supplemented to date, Plaintiff fares no better in establishing proof. In his Interrogatory responses, Plaintiff has stated:[13]

> **INTERROGATORY NO. 7**: State in specific detail the facts and circumstances surrounding Your Donation to TIGHAR. Your response should include a description of how You learned of TIGHAR and NIKU VII, Your motivation for Your Donation, any and all Statements or Communications You had with TIGHAR about the Donation, any Statements and Communications You had with any other Person about Your Donation, the date, time and substance of any such Communication or Statement, and the Identification of any such Person.
>
> **ANSWER**: In March, 2012 Plaintiff saw an article in the Casper Star Tribune documenting Defendants efforts to discover the Earhart wreckage and discussing its anticipated expedition in the Summer of 2012. After seeing the article, Plaintiff called Ric Gillespie to speak to him about the expedition and to explore the possibility of supporting the next expedition. During the conversation Mr. Gillespie represented that the purpose of the expedition was to discover the Earhart wreckage. He also spoke about the cost of the expedition and spoke with Plaintiff about the possibility of Plaintiff supporting up to half of the expenses for the upcoming expedition.

---

[13]  Copies of all Plaintiff's Interrogatory Responses referenced in this Memorandum are attached as Exhibit G and incorporated herein by this reference.

**INTERROGATORY NO. 8**: State in specific detail the facts supporting the statement in Paragraph 18 of Your Complaint that Ric Gillespie met with You to "solicit contributions." Your response should include the date, time and location of such meeting and any and all Statements made by and Communications You had with Ric Gillespie or any other Person regarding such "solicitations."

**ANSWER:** Plaintiff believes that he met once with Mr. Gillespie after the initial phone conference and before making his contribution. The parties met at Legal Sea Food in Warwick, Rhode Island where Mr. Gillespie further explained TIGHAR's efforts to discover Earhart artifacts and his need for funding for the upcoming expedition.

**INTERROGATORY NO. 9**: State in specific detail the facts supporting the statement in Paragraphs 21 and 33 of Your Complaint that "Mr. Gillespie represented that the wreckage has not been found" and that the "search for the Earhart aircraft was unsuccessful." Your response should include any and all Statements and Communications You had with Ric Gillespie or any other Person regarding such "representations."

**ANSWER:** Mr. Gillespie made clear in every conversation with the Plaintiff that the purpose of the 2012 expedition was to discover the Earhart wreckage. At no time did he indicate that the wreckage has previously been located.

**INTERROGATORY NO. 10**: State in specific detail the facts supporting the statement in Paragraph 27 of Your Complaint that "TIGHAR knowingly and intentionally misrepresented the status of its exploration and investigation into the Earhart aircraft to Mellon." Your response should include any and all Statements and Communications You had with TIGHAR or any other Person regarding such "misrepresentations."

**ANSWER:** See responses to Interrogatories 7, 8 and 9.

In his Requests for Admission, found in the attached Exhibit D, Plaintiff states:

14.     Admit that You have no conclusive, physical proof that actual Earhart Artifacts are underwater near Nikumaroro.

**RESPONSE:** Denied. Mr. Mellon has film of underwater artifacts.

15.     Admit that your belief that the Niku VI underwater footage depicts Earhart Artifacts is based on your opinion, and/or the opinions of Your experts.

**RESPONSE:** Denied. Plaintiff's belief that the NIKU VI underwater footage depicts the Earhart artifacts is based upon the fact that artifacts are shown in the footage.

24.     Admit You have no Documents or Writings or Communications establishing that from the conclusion of Niku VI until the date of Your Donation TIGHAR had discovered Earhart Artifacts.

**RESPONSE:** Denied.  Plaintiff has film from the Niku VI Expedition showing Earhart Artifacts.

25.     Admit You have no non-tangible evidence, Documents, Writings or Communications establishing that TIGHAR ever found Earhart Artifacts.

**RESPONSE:** Objection.  The request to admit is unduly vague in that it is unclear what "non-tangible evidence" is.  Without waiving its objection, the request for admission is denied.

_____
Timothy M. Stubson

These responses underscore that Plaintiff has a belief, and photographs subject to different opinions, but this does not even approach proof of the elements of fraud, let alone establish any of them through "clear, unequivocal and convincing evidence."  Plaintiff's belief alone cannot establish that Defendants knew they had found Earhart Wreckage, or that they schemed to hide the discovery, or that they lied about it to coerce Plaintiff into giving his gift.  When one recalls what the claim is and what the Plaintiff must prove, then realizes that Plaintiff offers no emails, no fax or other written communication, or any witnesses anywhere, that he only relies on his opinion, the only supportable conclusion is that the Defendants are entitled to summary judgment.

Of course, as there is no evidence, there is also no particularity, another requirement for fraud.  *Meyer v. Norman*, *Id*.  Plaintiff does not offer times, places or contents of false representations, who made them, or how they caused any action and the consequences.  Without more, indeed without *something* other than his own opinion, Plaintiff's claim fails.

Plaintiff's experts do nothing to overcome this lack of evidence.  They only opine that what they see is "consistent with" airplane parts.  *See* Plaintiffs expert reports, filed herein as documents 37 and 43, generally, and incorporated herein by this reference.  These conclusions,

arguably of no use under the best of circumstances, cannot begin to approach the required burden of proof of "clear, unequivocal and convincing evidence" that Defendants have committed fraud.

Indeed, Plaintiff's experts really have no bearing on the fraud claim whatsoever, as their evidence doesn't go to any of the elements, i.e., what Defendants knew and when, whether they lied, etc. Their evidence, even if accepted, does not show Defendants had actual knowledge they had found Earhart Wreckage and chose to lie to the Plaintiff about it. This is obviously essential to any intentional misrepresentation claim. *Phillips*, *Id*. There is simply no evidence that the Defendants had knowledge of any discovery, and you cannot lie about what you don't know. Plaintiff obviously disputes whether Earhart Wreckage has been found, but his belief alone will not support a fraud claim. This lack of evidence justifies a grant of summary judgment in Defendants' favor, and a dismissal of this claim.

### IV.    Argument - Opinion Evidence Cannot Support Fraud

Plaintiff clearly has an opinion, yet nothing more. He attempts to bolster that belief through the designation of paid experts, who render "consistent with" opinions. Not only do "consistent with" and "not inconsistent with" opinions not rise to the level of "clear, unequivocal and convincing evidence," the Wyoming Supreme Court long ago held that mere opinion evidence to be insufficient as a matter of law to support a fraud claim.

In *Davis v. Schiess*, 417 P. 2d 19 (Wyo. 1966), the Wyoming Supreme Court addressed a dispute "based on fraud and deceit in connection with the purchase of a motel." *Id*. at 20. For the court, the core of the dispute was the value of the motel. The Court held that "an expression of opinion as to value is not fraud," but continued to explicitly state that "a statement which is but an expression of opinion is generally not held to be the representation of a fact." *Id*. at 21, (additional citations omitted). Since an opinion is not a representation of fact, it cannot be the basis for fraud; therefore, a difference of opinion certainly cannot then support a claim of fraud.

Providing no evidence other than his opinion and the "consistent with" opinion of his experts is patently insufficient as a matter of law to support his fraud allegations under *Davis*, *id.*

Plaintiff has designated experts in this matter to render opinions about what they see in the 2010 video.[14]  Assuming, *arguendo*, that these expert opinions stand,[15] the most they offer is the opinion that the video depicts shapes "consistent with" wreckage.  The experts never give a conclusive opinion or articulate one that can be interpreted as being "clear, unequivocal and convincing."  The highly qualified wording of the expert reports shows that their testimony does not rise to the level of "clear and convincing" evidence.  The experts' opinions also do not help the Plaintiff overcome the *Davis* standards set forth above, as they are nothing more than opinions, upon which a fraud claim cannot stand.  Since Plaintiff offers no further evidence, this claim is appropriate for summary judgment.

To Plaintiff, his opinions of the video footage, the Cook photograph, and the Bevington object are enough to prove fraud.  Yet under the ruling in *Davis*, let alone simple common sense, the opinion of what shapes photographs and videos may be "consistent with" is simply not "clear, unequivocal and convincing evidence."  Plaintiff's experts do not state that the airplane is present in the video of Nikumaroro, but instead merely state that certain formations are "consistent with" a particular model of aircraft.  Plaintiff's case is based entirely upon belief and speculation, unsupported by evidence and contrary to authority.  Plaintiff's case clearly does not rise to the level of either clear, or unequivocal or convincing evidence."

---

[14]   Defendants believe that the 2012 video, having been taken after the Plaintiff made his donation, is utterly irrelevant to this action, likely prejudicial, and will be one basis for their challenges to Plaintiff's experts.  Defendants note this objection here, and reserve the right to object on this issue at the appropriate time.

[15]   Defendants accept the reports, conclusions and opinions of Plaintiff's experts as true only for purposes of this motion.  By doing so the Defendants preserve and do not waive their right to challenge any and all aspects of Plaintiff's experts and their reports, conclusions and opinions.

**V.      Conclusion**

Fraud is difficult to prove, and it should be.  The very word borders on slanderous, conjuring images of dark alleys and sinister figures preying on the innocent and unsuspecting. For that reason, the law demands more proof from a party who would accuse another of it.  The law requires it be established by a standard higher than that of other civil actions.

In this case, it has been shown through discovery that Plaintiff's allegations are without foundation.  Plaintiff chose to sue over his opinion, and no more.  Months of discovery and the assets of a nonprofit have been squandered as Plaintiff has searched for some smoking gun, some evidence of any kind, nature or sort, to vindicate his opinion.    Plaintiff has not found any because there is none.   This lawsuit rests purely on what Plaintiff believes he sees in photographs, and that cannot and should not allow him to proceed further.  Discovery has proven only that there is no fraud under any standard this Court may apply, let alone the standard applicable to fraud.  The law and the facts in this matter – or the lack of facts – justify the grant of summary judgment in favor of TIGHAR and Mr. Gillespie.

**DATED** this 19th day of July, 2014.

THE INTERNATIONAL GROUP FOR HISTORIC
AIRCRAFT RECOVERY and RICHARD E.
GILLESPIE


By      _____/s/_____
            John A. Masterson  #5-2386
            Alaina M. Stedillie  #6-4327
            Lewis Roca Rothgerber LLP
            123 W. 1st Street, Suite 200
            Casper, WY  82601
            307-232-0222
            307-232-0077 fax
            jmasterson@lrrlaw.com
            astedillie@lrrlaw.com

William J. Carter ISB#5295 *(Pro Hac Vice)*
Dean & Carter, PLLC.
1112 Main Street, #302
Boise, Idaho 83702
Phone: (208) 489-6004
Fax: (208) 246-6363
carter1@dean-carterlaw.com


Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2014, a true and correct copy of the foregoing was electronically served upon all parties registered as CM/ECF users in this case via the Court's CM/ECF electronic mail service including the following:

Jeff Oven                                    Timothy Stubson
Crowley Fleck PLLP                           Crowley Fleck PLLP
P.O. Box 2529                                152 N. Durbin, suite 220
Billings MT  59103-2529                      Casper, WY  82601
joven@crowleyfleck.com                       tstubson@crowleyfleck.com


_____/s/_____
Lewis Roca Rothgerber LLP