## ANTIQUITIES MANAGEMENT AGREEMENT

This Antiquities Management Agreement ("Agreement"), dated 20 March 2012, is entered into by and between **THE INTERNATIONAL GROUP FOR HISTORIC AIRCRAFT RECOVERY**, located at 2812 Fawkes Drive, Wilmington, Delaware 19808 United States of America ("TIGHAR") and the **GOVERNMENT OF THE REPUBLIC OF KIRIBATI**, a sovereign democratic republic ("Kiribati"), with reference to the following facts:

### RECITALS

i. Kiribati is a duly constituted sovereign democratic republic that is obliged, under national and international law, to preserve its cultural heritage, including artefacts and locations within its territorial boundaries that are of historical, archaeological and/or cultural significance.

ii. Kiribati and the United States of America entered into a *Treaty of Friendship and Territorial Sovereignty* dated 20 September 1979, the purpose of which is, in part, to maintain the bonds of peace and friendship that exist between the people of the United States and the people of Kiribati. The Treaty encourages cooperation between the two countries to protect the unique natural and cultural resources of Kiribati, and obliges the two countries to encourage and facilitate scientific research activities and cultural exchanges, for their mutual benefit.

iii. TIGHAR is a non-profit aviation historical foundation organised under the laws of the United States of America, tax-exempt under section 501(c)(3) of the *United States Internal Revenue Code*. Since 1988, TIGHAR has been using historical research, archaeological investigation, artefact analysis and scientific study to determine the fate of Amelia Earhart and her navigator Frederick Noonan and locate wreckage of the Lockheed Model 10E airplane Amelia Earhart flew in a failed 1937 bid to circumnavigate the globe. TIGHAR is testing the hypothesis that Amelia Earhart and Frederick Noonan landed on or near Nikumaroro, an atoll in the Phoenix group of islands in Kiribati.

iv. The parties acknowledge that TIGHAR's scientific research activities mutually benefit both the United States and Kiribati, encourage and facilitate cultural exchange and are of major historical significance for both the United States and Kiribati.

v. Kiribati has worked closely with and provided valuable assistance to TIGHAR as it conducted research within Kiribati on past expeditions. Likewise, TIGHAR has made research available to and cooperated fully with Kiribati.

vi. TIGHAR has developed a body of evidence supporting its hypothesis that Amelia Earhart and/or Frederick Noonan perished in Kiribati in 1937, but TIGHAR has not yet located conclusive evidence to that effect. Nevertheless, in light of the expertise developed by TIGHAR since 1988, the aforementioned Treaty, TIGHAR's track record of compliance with and respect for Kiribati law and cultural resources, and TIGHAR's and Kiribati's

shared desire to protect Kiribati's cultural heritage, the parties wish to continue cooperating with one another, expand TIGHAR's responsibilities as set forth below and formalise their relationship by this Agreement.

vii. Nikumaroro and the other islands of the Phoenix group are located within the Phoenix Islands Protected Area (PIPA), one of the largest marine protected areas in the world. The PIPA was inscribed on the World Heritage List in August 2010, and Kiribati is obliged to ensure that all activities within the PIPA are conducted with due regard for the islands' environmental significance.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is acknowledged, TIGHAR and Kiribati agree as follows:

1. **Term.**

    a. This Agreement shall be for a period of ten (10) years from the date hereof unless otherwise terminated in accordance with the terms contained herein.

    b. TIGHAR shall have the option to extend the term of this Agreement for an additional five (5) years from the date of expiration of the initial term. TIGHAR shall exercise said option by providing Kiribati with ninety (90) days' prior written notice as outlined herein.

    c. Further extensions of this Agreement may be mutually agreed to by the parties and documented by a written instrument signed by both parties.

2. **Exclusive licence.**

    a. So long as this Agreement is in effect, and subject to compliance with the terms of this Agreement, Kiribati hereby grants and TIGHAR accepts an exclusive licence and right to search for, study, recover and preserve artefacts, including plane parts or wreckage, bones, personal effects or any other items, relating to or which tend to suggest the presence of Amelia Earhart and/or Frederick Noonan within the territorial boundaries of the Republic of Kiribati.

    b. TIGHAR's rights under this licence may be exercised directly by TIGHAR or in conjunction with subject-matter experts or third parties whom TIGHAR has determined possess the appropriate skill or equipment necessary to further the objective of this licence.

    c. Kiribati warrants that it has not granted, and agrees that it will not grant, any similar rights to any third party. Where, after the entry into force of this Agreement, any third party contacts or approaches Kiribati seeking permission to search or enter Kiribati for a purpose outlined herein, Kiribati will refer the proposal to TIGHAR,

who will, at its own cost and expense, communicate with the third party and assess the proposal. Following such assessment, TIGHAR will recommend to Kiribati that it: allow the proposed activity; allow the proposed activity under certain stated conditions; or prohibit the proposed activity. Kiribati will then take TIGHAR's recommendation into consideration in deciding whether or not to allow the proposed activity.

3. **Artefact Ownership.**

   a. Unless otherwise agreed to herein, the parties acknowledge that by virtue of its presence inside Kiribati and under applicable Kiribati law, Kiribati owns and has all legal right to possess Amelia Earhart's plane, wreckage or parts thereof, and any artefacts recovered during past and future TIGHAR expeditions within Kiribati.

   b. Unless the parties agree otherwise, upon termination of or expiration of this Agreement all artefacts removed from Kiribati shall be returned to Kiribati at TIGHAR's expense, or displayed or stored elsewhere at Kiribati's discretion and expense.

4. **Intellectual Property.** TIGHAR shall own and retain exclusive worldwide right in perpetuity to all photographs, journals, records, video and sound recordings, documentation, research papers, presentations, correspondence, notes, analyses, compilations or other materials generated by TIGHAR, its members, agents or authorised third parties in the course of conducting expeditions or other work performed to prove its hypothesis or pursuant to this Agreement, including past expeditions, or any other activity undertaken by TIGHAR pursuant to this Agreement.

5. **Human Remains/Personal Effects.** Where artefacts recovered by TIGHAR can be conclusively identified as personal effects belonging to or human remains of Amelia Earhart or Frederick Noonan, the parties agree that TIGHAR shall use reasonable efforts to locate and return such effects or remains to the respective next of kin.

6. **Removal of Artefacts from Kiribati.**

   a. Kiribati consents to the removal of artefacts from Kiribati by TIGHAR only for the following purposes:

      i. analysis;
      ii. study;
      iii. testing;
      iv. preservation;
      v. display; and
      vi. return under Article 5.

b. Artefacts shall be removed, collected, stored and displayed in such a manner that they are preserved. TIGHAR shall not cause any unnecessary harm to the environment in the course of artefact retrieval.

c. TIGHAR shall provide Kiribati with a written summary of the artefacts removed, date of removal, present location and summary of any tests performed in respect of each artefact. This summary shall be updated by TIGHAR as necessary to keep Kiribati fully informed as to the status of each artefact.

d. TIGHAR shall make any artefact available to Kiribati for inspection during normal business hours and upon reasonable notice.

e. In the event that TIGHAR assembles a collection of artefacts capable of generating revenue in a museum display or travelling exhibit, TIGHAR shall notify Kiribati thereof and the parties shall negotiate in good faith to determine what portion of any display revenue shall be paid to Kiribati. No such display or exhibit may take place unless and until the agreement on revenue sharing has been concluded.

7. **Compliance with Kiribati law.** While undertaking activities in Kiribati, TIGHAR, its employees and agents, and all experts or third parties operating under TIGHAR's authority will at all times conduct themselves in accordance with all relevant laws of Kiribati.

8. **Default.** In the event that TIGHAR is in default of any of its obligations hereunder, Kiribati shall notify TIGHAR in writing and TIGHAR shall have a period of ninety (90) days from receipt of Kiribati's notice to cure said default. If TIGHAR fails to cure said default within the time prescribed and no extensions have been granted, Kiribati may elect to terminate this Agreement.

9. **Notices.** Notices shall be in writing and delivered by personal delivery, electronic mail, an express overnight service (such as Federal Express) or telecopier (with confirmation and concurrent mailing), addressed as set forth below or such other address designated by a party in writing. Copies of notices shall go to the following persons (or their duly notified successors in office):

For TIGHAR:

Ric Gillespie
Executive Director
TIGHAR
2812 Fawkes Drive
Wilmington, DE 19808
United States of America

Facsimile No: +1-302-994 7945
Email: <ric@tighar.org>

> Bill Carter
> Dean & Carter, PLLC
> 1112 Main Street #302
> Boise, ID 83702                    Facsimile No.: +1-208-246 6363
> United States of America           Email: <carter@dean-carterlaw.com>

For Kiribati:

> Secretary
> Ministry of Environment, Lands and Agricultural Development
> Post Office Box 234
> Bikenibeu, South Tarawa            Facsimile No.: +686-28334
> Republic of Kiribati               Email: <information@environment.gov.ki>

> Secretary
> Ministry of Foreign Affairs and Immigration
> Post Office Box 68
> Bairiki, South Tarawa              Facsimile No.: +686-21466
> Republic of Kiribati               Email: <secretary@mfa.gov.ki>

> Secretary
> Ministry of Line and Phoenix Islands Development
> Ronton, Kiritimati
> Republic of Kiribati               Facsimile No.: +686-81278

10. **Entire Agreement.**

    a.  This Agreement contains the entire agreement between the parties with regard to the subject matter of this Agreement and supersedes all prior agreements, arrangements, negotiations, and understandings, written or oral, relating to the subject matter hereof.

    b.  This Agreement may not be changed or modified, in whole or in part, except by an instrument in writing signed by both parties.

11. **No Waiver.** The failure of either party at any time or times to require performance of any provision of this Agreement, or to exercise any right, shall in no manner affect the right at a later time to enforce the same. No waiver by either party of the breach of any term or covenant contained in this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be, or construed as, a further or continuing waiver of any such breach, or a waiver of the breach of any other term or covenant in this Agreement.

12. **Assignment.** Neither TIGHAR nor Kiribati may assign this Agreement, or any portion thereof, without prior written consent of the other.

13. **Governing Law.** This Agreement shall be governed and construed in accordance with the laws of the State of Delaware, United States of America, applicable to contracts entered into and fully performed therein without giving effect to principles of conflict of laws. All claims must be brought exclusively in federal court in Delaware.

14. **Dispute Resolution.** The parties agree to use their best endeavours to reach an amicable settlement of any dispute that may arise under or relating to this Agreement, in order to avoid resorting to legal action.

15. **Severability.** If any part of this Agreement is found by a court in Delaware to be unreasonable, then such part shall be considered amended to the extent considered reasonable by the court and, as amended, shall be enforced; all remaining terms and conditions shall continue in full force and effect. The invalidity or unenforceability of any provision or provisions of the Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

| For The International Group For Historic Aircraft Recovery, Inc. | For the Government of the Republic of Kiribati |
|---|---|
| _Signed_ | _Signed_ |
| RICHARD GILLESPIE<br>Print name | TESSIE ERIA LAMBOURNE<br>Print name |
| EXECUTIVE DIRECTOR<br>Title | SECRETARY FOR FOREIGN AFFAIRS<br>Title |